# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MONOTYPE IMAGING, INC. a Delaware corporation (f/k/a/ AGFA MONOTYPE CORP.) and INTERNATIONAL TYPEFACE CORPORATION, a New York corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 03 C 4349 |
| v. | ) ) | |
| BITSTREAM INC., a Delaware corporation, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Monotype Imaging, Inc. ("Monotype") and International Typeface Corporation ("ITC") bring this suit against Defendant Bitstream Inc. ("Bitstream") for copyright infringement, trademark infringement, and violation of the Digital Millennium Copyright Act. Bitstream moves for summary judgment on all counts of Plaintiffs' Complaint. For the reasons discussed below, the Court grants in part and denies in part Bitstream's Motion.

## BACKGROUND

### I.     Parties

Plaintiffs directly compete with Bitstream in the field of font software and technologies. (R. 66-1; Pl.'s Resp. to Def.'s Stmt. Mat. Facts ("SMF") ¶ 3.)  Plaintiffs also license and distribute font software from their extensive font libraries.  (*Id.* ¶ 3.)  ITC is a wholly owned subsidiary of Monotype. (*Id.* ¶ 4.)  Like Plaintiffs, Bitstream is a software development company

that develops and licenses font technology software.  (*Id.* ¶ 1.)

## II.    TrueDoc

In the early 1990s, Bitstream developed TrueDoc, a program which facilitates the display of typeface designs on computer screens and other output devices.  (*Id.* ¶¶ 16, 19.)  Bitstream openly promoted the fact that TrueDoc replicated original fonts without posing risks to the original font designer's intellectual property.  (*Id.* ¶ 20.)  TrueDoc software includes a Character Shape Recorder ("CSR") component, which creates a compact file format called a Portable Font Resource ("PFR") based on an underlying font software program.  (*Id.* ¶ 7.)  As an example of its use, a PFR file may be transmitted with a document to a recipient for reproducing typeface designs.  (*Id.*)  Bitstream has marketed, developed, and licensed several versions of TrueDoc technology.  (*Id.* ¶¶ 17, 18.)  Several  international standards-setting organizations have also adopted PFR.  (*Id.* ¶ 38.)  When accessing information from the operating system about the font software, TrueDoc does not request the copyright notice from the Windows API.  (R. 72-1; Def.'s Resp. to Pl.'s SMF ¶¶5,8.)  Bitstream has licensed TrueDoc to hundreds of users during the past ten years.  (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 17.)  Also, online tutorials exist how to use Bitstream's TrueDoc technology.  (*Id.* ¶ 28.)  One of these tutorials demonstrates TrueDoc used with an ITC font called "Tempus Sans."  (*Id.*)

## III.    Plaintiffs' Knowledge of TrueDoc's Infringement

In early 1998, Monotype conducted testing to determine if TrueDoc infringed upon its intellectual property by copying portions of Monotype's font software programs.  (*Id.* ¶ 34.)  From the results of this testing, Monotype concluded that Bitstream was not infringing its copyrights.  (*Id.*)  In May 1998, a few months after Monotype concluded its testing, Ira

2

Mirochnick, a Monotype employee, received an e-mail from David Berlow ("the Berlow e-mail"), a professional in the font industry. (*Id.* ¶ 35; R. 54-1; Def.'s SMF, Ex. 21.) In this e-mail, Berlow included an excerpt from an e-mail that he had sent to Bitstream, listing his concerns about TrueDoc's infringement of intellectual property rights. (*Id.*) Berlow also cautioned Monotype: "Bitstream is unaware of your knowledge of this conversation, and I'd like to keep it that way, as well as keeping this on a private 'need to know' basis." (*Id.*) Berlow indicated that he had attended a Bitstream press conference, and discovered at the conference that TrueDoc used Monotype trademarks and accessed Monotype's underlying font program code to retrieve information. (*Id.*) Specifically, Berlow noted that he had spoken with Bitstream representatives and learned that TrueDoc "captures kerning pairs where appropriate" and "trademarked names" from font programs. (*Id.*) Berlow also shared Bitstream's responses to his complaints in this e-mail:

> . . . I've gotten a range of reactions from Bitstream on this:
> 1. These trademarked names "are too obscure for users to find."
> . . .
> 2. "you should be glad we're doing this for you, the type designer."
> . . .
> 3. "MS Word does the same thing."

(*Id.*) Berlow then mentioned that he had spoken with his attorney, and that he was considering taking legal action against Bitstream. (*Id.*)

Mirochnick forwarded the Berlow e-mail to his colleagues. (*Id.* ¶¶ 34, 35.) Monotype did not conduct further testing until 2002. (*Id.*; Def.'s SMF, Ex. 21.) Furthermore, Monotype did not notify Bitstream of its concerns. (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 39.) In 2002, Bitstream published the specifications of TrueDoc for an international standard-setting

organization. (*Id.* ¶ 34.) Using this specification, Monotype conducted further testing and concluded that Bitstream was indeed infringing on Monotype's intellectual property. (*Id.*) On June 7, 2003, Monotype filed this suit. (R. 1-1; Compl.)

## ANALYSIS

### I.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *See Vukadinovich v. Board of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002); *also see CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 677 (7th Cir. 2001) (courts will grant summary judgment in trademark or copyright cases when the evidence is so one-sided that there can be no doubt about how the question should be answered) (internal citations omitted).

### II.   Plaintiffs' Trademark Infringement Claims

#### A.    Bitstream Has Not Directly Infringed Plaintiffs' Trademarks

Plaintiffs now concede that they are not seeking liability against Bitstream for direct

4

infringement of Plaintiffs' trademarks. Accordingly, the Court grants summary judgment on this issue.

## B.    Plaintiff's Indirect Trademark Infringement Claims

Instead, Plaintiffs assert contributory infringement against Bitstream, arguing that Bitstream's licensees' have directly infringed Plaintiffs' trademarks. The Court turns to these claims of indirect trademark infringement.

In order to prove contributory trademark infringement, a plaintiff must demonstrate that a defendant: (1) intentionally induced a third party to infringe the plaintiff's mark; or (2) supplied a product to a third party with actual or constructive knowledge that the product was being used to directly infringe the mark. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992); *SB Designs v. Reebok Intern., Ltd.*, 338 F.Supp.2d 904, 911 -912 (N.D. Ill. 2004). Contributory infringement therefore requires proof of direct infringement by a third party, as well as defendants' intent and knowledge of the wrongful activities of its distributors. *David Berg and Co. v. Gatto Intern. Trading Co., Inc.*, 884 F.2d 306, 311 (7th Cir. 1989). A court can hold a manufacturer liable for contributory trademark infringement even if the manufacturer does not itself mislabel the goods or deceive any customers. *Inwood Labs.*, 456 U.S. at 853-54; *David Berg*, 884 F.2d at 311.

### 1.    Whether Bitstream's Licensee's Have Directly Infringed Plaintiffs' Trademarks

Bitstream argues that its licensees, when using TrueDoc, do not directly infringe Plaintiffs' trademarks because the TrueDoc software does not use Plaintffs' trademarks. (R. 53-1; Def.'s Mot. for Summ. J. ("MSJ") at 12.) Even if Bitstream's licensees use Plaintiffs'

5

trademarks, Bitstream argues that there is no likelihood of confusion from that use. (*Id.* at 12-13.)

### a.  Whether Bitstream's Licensees Use Plaintiffs' Trademarks

As evidence of direct infringement, Plaintiffs point to online tutorials that demonstrate use of Plaintiffs' trademarks by Bitstream's licensees in conjunction with online tutorials for TrueDoc. (R. 66-1; Pl.'s Stmt. Add. Mat. Facts "SAMF" ¶ 13.)  The parties dispute the nature of these online tutorials.  Bitstream contends they are noninfringing fair uses because they occur on educational, non-commercial websites. (R. 72-1; Def.'s Resp. to Pl.'s SMF ¶ 13.)  Plaintiffs counter by arguing that these pages are commercial "in that they provide content on a commercial web venture and in some cases have hyperlinks to Bitstream websites." (R. 66-2; Pl.'s Resp. to Def.'s SMF ¶ 28.)  Viewing the evidence in the light most favorable to Plaintiffs, the Court cannot determine the nature of Bitstream's licensees' use of Plaintiff's trademarks as a matter of law.  This issue remains for the trier of fact.

Similarly, the parties dispute TrueDoc's use of Plaintiffs' font names.  Bitstream argues that TrueDoc's use does not amount to trademark infringement because Plaintiffs' font names are only used to trigger TrueDoc's functionality on the user's computer. (R. 53-1; Def.'s MSJ at 13; R. 54-1; Def.'s SMF ¶ 11.)  Based on this use, the ordinary computer user would not even see the font name constituting Plaintiffs' trademark, let alone be confused by that name. (R. 54-1; Def.'s SMF ¶ 12.)  In contrast, Plaintiffs present evidence that the font name is used to deceive a user into believing that the user is viewing an original font when in reality the font is an inferior derivative copy. (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 11.)  Plaintiffs' expert, Mr. Krishfield, opined that TrueDoc copies Plaintiffs' font names and uses those names in

6

association with a font inferior to Plaintiffs' fonts. (*Id.*, Ex. A at 16-18.) Plaintiffs further contend that a user interested in viewing the font name can easily do so through a browser toolbar. (*Id.* ¶ 12.) Taking all inferences in favor of Plaintiffs, this evidence demonstrates that TrueDoc uses Plaintiffs' trademarked font names to signify the source of the underlying fonts. Courts have recognized that this is the type of use that can infringe upon one's protectable trademark rights if a likelihood of confusion is shown. *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 696 (6ᵗʰ Cir. 2003) (noting that trademark laws apply to the use of marks to signify source). These disputes are genuine issues of material facts regarding the manner in which TrueDoc uses the Plaintiffs' trademarks, if at all, and the Court cannot resolve them on summary judgment.

### b. Likelihood of Confusion

Bitstream argues that even if Plaintiffs' trademarks are used by end users of TrueDoc, this use still does not amount to trademark infringement because no likelihood of confusion exists. In assessing the likelihood of confusion, the Seventh Circuit has identified seven relevant factors: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiffs' mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7ᵗʰ Cir. 2002).

The parties both present sufficient evidence supporting their arguments regarding likelihood of confusion, thereby creating a genuine issue of material fact. Bitstream, for

example, argues that the intent and evidence of actual confusion[1] factors weigh heavily for Bitstream. (R. 53-1; Def.'s MSJ at 13-14.) Specifically, Bitstream points to the absence of any evidence that it was intentionally pawning off inferior fonts as those of Plaintiffs or that any actual confusion has ever occurred. Plaintiffs respond that the similarity of marks, similarity of products, and area and manner of concurrent use[2] factors favor Plaintiffs. (R. 60-1; Pl.'s Resp. to Def.'s MSJ at 12-13.) Plaintiffs point to evidence that TrueDoc uses the identical font name as Plaintiffs' trademarked name and uses it to identify a similar product – a font. (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 12; Ex. A at 16-18.) Plaintiffs also dispute the existence of evidence of intent to pawn off. Plaintiffs point to numerous statements by Bitstream demonstrating that Bitstream advertised the TrueDoc software as functioning with font software belonging to all companies, not just Bitstream. (R. 66-1; Pl.'s SAMF ¶¶ 20-27.) This evidence of intent, similarity of marks, and similarity of products creates a triable issue of fact whether a likelihood of confusion exists. *See Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 898 (7th Cir. 2001) ("Even though no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the "most important factors" in a likelihood of confusion case").

### 2. Bitstream's Intent to Induce Third Party Infringement

Bitstream next argues that even if Bitstream's end users directly infringe Plaintiffs' trademarks, Bitstream does not intentionally induce that infringement. In particular, Bitstream contends that TrueDoc was not "designed or intended to be used with any of Plaintiffs' allegedly

---

[1]In particular, Bitstream argues that Plaintiffs cannot point to a single instance of actual confusion. (R. 54-1; Def.'s SMF ¶ 31.)

[2]Plaintiffs do not point to any specific evidence in support of their assertion that the area and manner of concurrent use factor favors a finding of likelihood of confusion.

8

copyrighted font software." (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 20; R. 53-1; Def.'s MSJ at 13.) Plaintiffs, however, have submitted evidence that Bitstream marketed TrueDoc to consumers, claiming that "it could be used to convert any commercially available font to PFR." (R. 60-1; Pl.'s Resp. to Def.'s MSJ at 12; R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 20.) This evidence creates an issue of fact regarding Bitstream's intent to induce consumers to infringe Plaintiffs' trademarks.

### III. Plaintiffs' Copyright Infringement Claims

#### A. Bitstream Has Not Directly Infringed Plaintiffs' Copyrights

Plaintiffs, in opposing summary judgment, do not present any evidence or make any argument that Bitstream, itself, has directly infringed Plaintiffs' copyrights. Accordingly, the Court grants summary judgment on this issue.

#### B. Plaintiffs' Indirect Copyright Infringement Claims

The Court next addresses Plaintiffs' two theories of indirect copyright infringement – contributory infringement and vicarious infringement. Bitstream first argues that Plaintiffs have failed to prove either indirect copyright infringement theory because the instances of underlying direct infringement relied on by Plaintiffs constitute nonfringing fair uses. Bitstream next argues that it is not liable for contributory infringement because there exist substantial noninfringing uses for the accused TrueDoc software. Last, Bitstream argues that it is not liable for vicarious infringement because it neither directly financially benefits from the alleged infringement nor has the right and ability to supervise the alleged infringing activity. The Court addresses each of these issues in turn.

In order to support a claim of contributory infringement, plaintiff must demonstrate: (1)

direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement. *Marobie-Fl, Inc. v. National Ass'n of Fire and Equip. Distrib. and Northwest Nexus, Inc.*, 983 F.Supp. 1167, 1178 (N.D. Ill. 1997). In determining whether a defendant is liable for contributory infringement, the Seventh Circuit considers: (1) the respective magnitudes of infringing and noninfringing uses; (2) whether the defendant encouraged the infringing uses; and (3) efforts made by the defendant to eliminate or reduce infringing uses. *In re Aimster Copyright Litig.*, 334 F.3d 643, 649-651, 653 (7th Cir. 2003). Furthermore, the capability of substantial noninfringing uses of equipment may provide a shield against contributory liability. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

**1. Bitstream's Fair Use Defense to Direct Infringement by End Users**

In order for Bitstream to be liable for indirectly infringing Plaintiffs' copyrights, a third party must directly infringe those copyrights. Plaintiffs support their claim with examples of web tutorials as evidence of direct infringement. (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 28.) Bitstream argues that these examples of direct infringement constitute noninfringing fair uses. Bitstream, however, has failed to raise fair use as an affirmative defense. *Chicago Board of Education v. Substance, Inc.,* 354 F.3d 624, 629 (7th Cir. 2003) (citing *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). Fed.R.Civ.P. 8(c) requires that a party raising an affirmative defense, set forth that affirmative defense in its pleadings.[3] Accordingly, the Court cannot award summary judgment to Bitstream on that

___

[3]The Court recognizes that Bitstream's fair use argument is slightly different than the typical fair use defense. In the typical situation, where a copyright owner accuses a defendant of directly infringing its copyrights, a defendant asserts that its own conduct is a noninfringing fair

defense.

Alternatively, even if the Court did address Bitstream's fair use defense, summary judgment still fails. As an affirmative defense, Bitstream has the burden of proof. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). In assessing the affirmative defense of fair use, courts often consider several factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Campbell v. Acuff-Rose*, 510 U.S. 569, 576-577, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); *see also* 17 U.S.C. § 107. This list, however, is not exhaustive. The fair use doctrine "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Stewart v. Abend,* 495 U.S. 207, 236, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). Bitstream has not specifically addressed any of the factors provided by the Copyright Act. Therefore, it has failed to demonstrate that no genuine issue of material fact exists whether the alleged infringement of Plaintiffs' copyrights by end users of TrueDoc were, in fact, noninfringing fair uses.

---

use. Here, because Bitstream is rebutting a charge of indirect infringement, Bitstream is asserting that the acts of third party end users are fair uses under the Copyright Act. Therefore, the Court grants Bitstream leave to amend its pleadings, pursuant to Fed.R.Civ.P. 15, to add its affirmative defense of fair use. Bitstream has 30 days from the date of this Opinion to amend its pleadings for the limited purpose of adding its fair use defense as set forth in its summary judgment briefing.

## 2. Whether Bitstream Contributed to Infringement

### a. Bitstream's Defense of Substantial Noninfringing Uses

Bitstream also argues that TrueDoc is primarily and substantially capable of significant non-infringing uses. (R. 53-1; Def.'s MSJ at 9.) Using TrueDoc to create PFR files does not infringe copyrights when used with any of Bitstream's own fonts. (R. 66-1; Pl.'s Resp. to Def.'s SMF at ¶¶ 15, 16). Plaintiffs contend that TrueDoc does not have substantial noninfringing uses, and point to evidence that it was designed to be used with any fonts, including Plaintiffs' fonts.[4] (R . 60-1; Pl.'s Resp. to Def.'s MSJ at 7; R. 66-1; Pl.'s Resp. to Def.'s SMF at ¶ 20.)

While each side points to respective examples of allegedly infringing[5] or noninfringing

---

[4]Bitstream moves to strike Plaintiffs' reliance on two specific instances of direct infringement because evidence of those alleged direct infringements was not produced during discovery. Because Plaintiffs admittedly failed to produce such evidence during fact discovery, the Court does not rely on the two instances of alleged direct infringement set forth in the "Dynamic Fonts" website in February 2004 and the "Digit Designs" website in November 2004.

[5]Although Plaintiffs only point to three instances of actual infringement that it claims have definitely occurred, (R. 66-1; Def.'s SAMF ¶ 16), Plaintiffs point to a substantial number of other instances of infringement that it contends have more likely than not occurred. (*Id.* at ¶ 28, Ex. D, at ¶¶ 7-14.) In particular, Plaintiffs rely on the testimony of Steve Kuhlman, the Vice President and General Manager of the Display Imaging Division of Monotype, that over 10% of the Adobe library of fonts consists of Plaintiffs' copyrighted fonts. (*Id.*) While Plaintiff must point to at least one instance of infringement of its own copyright in order to prove a case or controversy exists, *Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339, 1345 (Fed. Cir. 2004) (noting that in patent context, §271(e)(2) of the Patent Act provides patentees with a defined act of infringement sufficient to create the case or controversy jurisdiction required in intellectual property infringement actions), allegations of other instances of infringement are governed by the appropriate standard of review. Also, in the patent context, the Federal Circuit has noted that a plaintiff that identifies an entire class of infringers, can cast its claims of indirect infringement more broadly across the entire class. *Dynacore Holdings Corp. v. U.S. Phillips Corp.,* 363 F.3d 1263, 1274 (Fed. Cir. 2004). Here, the testimony of Mr. Kuhlman creates a genuine issue of fact whether such a category of infringers exists. Therefore, the analogous field of patent law allows the Court to look to Plaintiffs' broad allegations of categorical infringement in determining whether Plaintiffs' have demonstrated substantial infringing uses of the TrueDoc software. *Sony,* 464 U.S. at 439 ("The closest analogy [to copyright law] is provided by the patent law

12

activity, (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶¶ 18, 20; SAMF ¶¶ 13.), it is unclear from the

record the precise magnitude of TrueDoc's noninfringing uses compared to its allegedly

infringing uses. *Aimster,* 334 F.3d at 649 ("It is not enough, as we have said, that a product or

service be physically capable, as it were, of a noninfringing use.")[6].

Additionally, in *Aimster,* Judge Posner also noted that:

> [e]ven when there are noninfringing uses of [a product], moreover, if the
> infringing uses are substantial then to avoid liability as a contributory infringer
> the provider of the service must show that it would have been disproportionately
> costly for him to eliminate or at least reduce substantially the infringing uses.

*Aimster,* 334 F.3d at 653.[7] Here, Bitstream has submitted no evidence or argument that it lacks

the ability to prevent the allegedly infringing uses of the TrueDoc software. Given these genuine

issues of fact regarding the magnitude of infringing and noninfringing uses and Bitstream's

---

cases to which it is appropriate to refer because of the historic kinship between patent law and
copyright law.")

[6]The Supreme Court is also in the process of ruling on the issue of indirect copyright
infringement in the context of software services provided over the Internet. *See Metro-Goldwyn-
Mayer Studios, Inc. v. Grokster Ltd.,* 380 F.3d 1154 (9th Cir. 2004), *cert. granted by Metro-
Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 125 S.Ct. 686, 160 L.Ed.2d 518 (2004).

[7]Bitstream argues that it is only required to demonstrate that it lacks the capability to
prevent the allegedly infringing activity if Plaintiffs first demonstrate substantial infringing uses.
First, as discussed above, Bitstream has not shown that no genuine issues of fact exist whether
substantial infringing uses exist. Second, separate from the passage of the *Aimster* opinion cited
by Bitstream, 334 F.3d at 649, Judge Posner stated that the ability to prevent infringement is a
factor to be considered in determining contributory infringement, without requiring that the
plaintiff first demonstrate substantial infringing uses. *Aimster,* 334 F.3d at 648 ("we agree with
the recording industry that the ability of a service provide to prevent its customers from
infringing is a factor to be considered in determining whether the provider is a contributory
infringer.") Additionally, in *Sony,* the Supreme Court first found that Sony had no control over
how its customers used the Betamax product. Only then did the Supreme Court go on to hold
that substantial noninfringing uses was a defense to contributory infringement. Here, Bitstream
has failed to make this preliminary showing required by both the Supreme Court's analysis in
*Sony* and the Seventh Circuit's analysis in *Aimster.*

capability to prevent infringement, the Court cannot grant summary judgment on this issue.

### b. Bitstream's Defense That It Is Unaware Of The Infringement

Bitstream next argues that it is not liable for contributory infringement because it was not aware of any infringing uses of its technology and never directly assisted any of its users in infringing Plaintiffs' fonts. (R. 70-1; Def.'s Reply MSJ at 12.) According to Bitstream, it intended Bitstream to be used solely with its own fonts. (R. 54-1; Pl.'s SMF ¶¶ 18, 20.) Plaintiffs point to evidence that TrueDoc is not marketed with Bitstream fonts and that Bitstream, in fact, intends TrueDoc to be used with fonts besides those of Bitstream. (R. 66-1; Def.'s Resp. to Pl.'s SMF ¶¶ 18, 20.) Further, as the Seventh Circuit recently discussed in *Aimster,* Plaintiffs are not required to prove that Bitstream knew of the alleged infringement. *Aimster,* 334 F.3d at 649 ("[w]illful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant *should* have known of the direct infringement, [])") (emphasis included). Therefore, genuine issues of fact exist whether Bitstream intended to induce the alleged infringement.

### 3. Vicarious Infringement

In order to support a claim of vicarious infringement, a plaintiff must demonstrate: (1) direct infringement by a primary infringer, (2) a direct financial benefit to the defendant, and (3) the defendant's right and ability to supervise the infringers. *Marobie-Fl*, 983 F.Supp. at 1179. "[A] defendant is vicariously liable for copyright infringement if it has 'the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Hard Rock Cafe,* 955 F.2d 1143, 1150 (7th Cir.1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).

For the reasons discussed above in Section III.B.1., issues of fact exist whether third parties have directly infringed Plaintiffs' copyrights. Bitstream next argues that it does not directly and financially benefit from the alleged infringement by third parties because any such infringement would actually be detrimental to the sale of Bitstream's own fonts. In support of their vicarious liability theory, Plaintiffs argue that Bistream receives a direct financial benefit because the allegedly infringing use of TrueDoc is "a trememdous draw for customers." Plaintiffs, however, do not point to any evidence in support of this assertion that TrueDoc's infringement is a "tremendous draw." The Ninth Circuit has recently held that the "essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir. 2004). In *Ellison,* the Ninth Circuit affirmed the district court's grant of summary judgment of no vicarious copyright infringement because the plaintiff failed to submit any evidence of the requisite causal relationship. In particular, the Ninth Circuit noted that "there is no evidence that indicates that [Defendants] customers either subscribed because of the available infringing material or canceled subscriptions because it was no longer available." *Id.* The Court finds persuasive the reasoning of the Ninth Circuit in *Ellison.* Because Plaintiffs have failed to set forth any evidence demonstrating a direct causal relationship between the alleged infringement and Bitstream's financial benefits, the Court grants summary judgment on the issue of vicarious copyright infringement.[8]

---

[8]The Court also notes that Plaintiffs did not cite to any evidence in support of their contention that Bitstream has a direct financial interest in the allegedly infringing activities. Attorney argument alone, however, is insufficient to survive summary judgment. *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 361 (7th Cir. 1992). Therefore, regardless of whether Plaintiffs were required to show the requisite "causal relationship" between infringement and

15

## IV.    DMCA Claim

### A.    Legal Standard

The Digital Millenium Copyright Act, 17 U.S.C. §1202, ("DMCA") prohibits the removal or alteration of copyright management information without authority of the copyright owner or the law. 17 U.S.C. § 1202. Under the DMCA, copyright management information includes copyright notice. 17 U.S.C. § 1202(c)(3). A plaintiff must demonstrate that the defendant made copies of plaintiffs' copyrighted material without the copyright management information available to users, knowing, or when it should have known, that this would lead to infringements of plaintiffs' copyrights. *Kelly v. Arriba Soft Corp.*, 77 F.Supp. 2d 1116, 1117 (C.D. Cal. 1999), *rev'd on other grounds*, 280 F.3d 934 (9th Cir. 2002), *withdrawn*, 336 F.3d 811 (9th Cir. 2003).

Bitstream first contends that TrueDoc does not remove copyright notices from the font software. (R. 66-1; Pl.'s Resp. to Def.'s SMF at ¶ 13.) Plaintiffs contend that failure to copy the copyright notice from its font software programs is virtually identical to removing the copyright notice. (R. 60-1; Pl.'s Resp. to Def.'s MSJ at 13; R. 66-1; Pl.'s Resp. to Def.'s SMF at ¶ 13.) The Court agrees with Plaintiffs that the plain language of the DMCA does not require that TrueDoc, itself, physically remove the copyright notices from the Plaintiffs' font software. The DMCA provides that "[n]o person shall, without the authority of the copyright owner or the law − [] (3) distribute ... copies of works ... knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, []." 17 U.S.C.

---

Bistream's financial benefit, Plaintiffs had failed to make a sufficient showing to warrant the Court denying summary judgment on the issue of vicarious copyright infringement.

16

§1202(b)(3). Therefore, the mere fact that TrueDoc does not "remove" the copyright notices, but instead makes copies of the font software without including the copyright notice, does not preclude liability under the DMCA.

Bitstream next argues that when TrueDoc retrieves information from the operating system about a font software program, the operating system does not provide the copyright strings. (R. 53-1; Def.'s MSJ at 14; R. 66-1; Pl.'s Resp. to Def.'s SMF at ¶ 13.) Plaintiffs point to the fact that the copyright information is accessible through the operating system, and Bitstream simply chooses not to include the copyright notice. (R. 60-1; Pl.'s Resp. to Def.'s MSJ at 13; R. 66-1; Pl.'s Resp. to Def.'s SMF at ¶ 13.) Plaintiffs rely on the testimony of their expert, who examined Bitstream's source code and opines that Bitstream is capable of engineering TrueDoc to retrieve the copyright notice along with the font software information. (R. 66-1; Pl.'s Resp. to Def.'s SMF, Ex. A at 18-19.) Viewing this evidence in the light most favorable to Plaintiff, this expert testimony creates a triable issue of fact whether Bistream copies Plaintiffs' fonts without the copyright notices in violation of the DMCA. Accordingly, the Court denies Bitstream's motion for summary judgment on Plaintiffs' DMCA claim.

## V.    Laches

Bitstream also seeks summary judgment on its affirmative defense of laches. To support a finding of laches, the defendant has the burden of proving three elements: (1) the plaintiff delayed in filing suit against the defendant; (2) the delay was unreasonable; and (3) this delay was prejudicial to the defendant. *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir. 1989); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 1996 WL 332689, at *3 (N.D. Ill. 1996). The trial court enjoys considerable discretion in deciding whether to apply the equitable doctrine of

laches, *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir.1999), and the Seventh Circuit has affirmed summary judgment on the laches issue. *See Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002).[9]

## A.    Actual and Constructive Knowledge

A plaintiff may submit proof of actual or constructive knowledge of the defendant's infringement to prove that the plaintiff unreasonably delayed filing suit. *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925 (7th Cir. 1984). Constructive knowledge of the alleged infringer's activities imposes on plaintiff the duty to police its rights. *Chattanoga Mfg.*, 301 F.3d at 793. "[W]here the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Id.* (citing *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370, 13 S.Ct. 585 (1893)). In order to satisfy the knowledge requirement of a laches defense, a defendant must demonstrate that the plaintiff had knowledge of the defendant's infringement, not merely knowledge of the existence of the accused activity. *What a Burger of Virginia, Inc. v. Whata-burger, Inc.*, 357 F.3d 441, 449 (4th Cir. 2004). Because the issue is knowledge of infringement, the Court must treat separately the issue of knowledge of copyright infringement and knowledge of trademark infringement.

---

[9]Other courts have recognized that resolution of laches issues at the summary judgment stage is unusual. *Country Floors v. Partnership of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir. 1991) ("[B]ecause the correct disposition of the equitable defense of laches can only be made by a close scrutiny of the particular facts and balancing of the respective interests and equities of the parties, as well as the general public, it usually requires the kind of record only created by full trial on the merits.").

## B.      Monotype's Knowledge of the Alleged Infringement[10]

### 1.      Monotype's 1995 Knowledge

Bitstream asserts that Monotype knew about TrueDoc technology as far back as 1995. (R. 54-1; Def.'s SMF ¶ 32.) Plaintiffs do not dispute that Monotype generally knew about TrueDoc in 1995. (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 32.) Rather, Plaintiffs contend that in 1995 Monotype did not know specifically how TrueDoc operated or whether it infringed Monotype's intellectual property. (R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 34.) The Court agrees with Plaintiffs that genuine issues of material fact exist whether Monotype knew of Bitstream's alleged infringement in 1995. *What a Burger*, 357 F.3d at 449 (mere knowledge that a product exists does not constitute knowledge of infringement). In particular, Monotype was uncertain whether it had a claim against Bitstream due to Bitstream's promotion of the fact that TrueDoc was noninfringing. (R. 72-1; Pl.'s Resp. to Def.'s SAMF ¶ 20.)

### 2.      Monotype's 1998 Testing of TrueDoc

Bitstream argues that Monotype should have known that TrueDoc infringed its intellectual property after it tested TrueDoc in 1998 because sufficient testing would have shown the nature of TrueDoc's functionality. Bitstream is correct that Plaintiff is chargeable with the information it might have received had due inquiry been made. *Pearson v. Central Ill. Light Co.*, 210 F.2d 352, 356-357 (7th Cir. 1954); *also see Kepner-Tregoe*, 79 F.Supp.2d at 488 (holding that an intellectual property owner's constructive knowledge satisfies the knowledge element of a laches defense). Nonetheless, whether Monotype's 1998 testing was sufficient is a triable issue of fact. Bitstream has not shown that Monotype's 1998 testing of TrueDoc was insufficient as a

---

[10]The parties do not address ITC in briefing the laches issues.

matter of law.

### 3. The 1998 Berlow E-mail

Bitstream also argues that the Berlow e-mail of May 1998, sent to Monotype employee Ira Mirochnick, demonstrates Monotype's knowledge of Bitstream's infringement. (R. 53-1; Def.'s MSJ at 15; R. 66-1; Pl.'s Resp. to Def.'s SMF ¶ 35.) In order to impute an agent's knowledge to the principal, "the agent must have duties with respect to trademark matters, although the agent need not have acquired the knowledge in connection with those duties." *Guardian Life Ins. Co. of Am. v. American Guardian Life Assurance Co.*, 943 F.Supp. 509, 520 (E.D. Pa. 1996); *also see U.S. v. One Parcel of Land Located at 7326 Highway 45 North, Three,* 965 F.2d 311, 316 (7th Cir. 1992) ("Where a corporate agent obtains knowledge while acting in the scope of his agency, he presumably reports that knowledge to his corporate principal so the court imputes such knowledge to a corporation."). Here, the undisputed facts show that Berlow's duties with Monotype included Monotype's trademark matters. Only a few months before receiving the Berlow e-mail, Mirochnick had exchanged several e-mails with his colleagues regarding Monotype's 1998 testing to determine whether Bitstream infringed upon any of Monotype's intellectual property. (R. 54-1; Def.'s SMF, Ex. 35.) Furthermore, Mirochnick forwarded the Berlow e-mail to other employees in the company. (*Id.*) Therefore, Monotype possessed corporate awareness of the contents of the Berlow e-mail because the e-mail was accessible to employees charged with the duty of investigating whether Bitstream infringed upon Monotype's intellectual property. (*Id.*)

Plaintiffs next argue that they could not have determined the exact nature of TrueDoc's use of Plaintiffs' trademarks because they did not have the proper specification describing

20

TrueDoc. (R. 60-1; Pl.'s Resp. to Def.'s MSJ at 14; R. 72-1; Def.'s Resp. to Pl.'s SAMF ¶ 17.)
Bitstream counters that Monotype could have learned of the precise functionality of TrueDoc
from Bitstream's licenses. (R. 72-1; Def.'s Resp. to Pl.'s SAMF ¶ 17.) Whether Plaintiffs'
performed a due inquiry to determine whether Bitstream was infringing Plaintiffs' trademarks is
a genuine issue of material fact.[11]

Although Bitstream argued that the Berlow e-mail gave Monotype knowledge of
Bitstream's alleged trademark infringement, Bitstream did not argue that this e-mail gave
Monotype knowledge of Bitstream's copyright infringement. (R. 53-1; Def.'s MSJ. at 15.) The
party seeking summary judgment has the burden of establishing the lack of any genuine issue of
material fact. *Celotex*, 477 U.S. at 323. Because Bitstream did not argue this issue, Bitstream
did not satisfy this burden regarding Monotype's knowledge of the alleged copyright
infringement. Accordingly, genuine issues of fact exist whether the Berlow e-mail gave
Monotype constructive knowledge of Bitstream's copyright infringement.[12]

---

[11]The Court notes that, while triable issues of fact exist, Bitstream presents a compelling case that Monotype had constructive knowledge of the alleged trademark infringement via the Berlow e-mail in 1998. Further, if such knowledge in fact existed, Plaintiffs' delay of five years in bringing suit would exceed the three year statute of limitations that court's often apply in analyzing laches in trademark cases. *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.,* 2003 U.S. Dist. LEXIS 14752, *41-42 (N.D. Ill. 2003) (in determining whether delay is unreasonable, Courts often look to the statute of limitations); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,* 2003 U.S. Dist. LEXIS 16737, *13 (N.D. Ill. 2003) (applying a three year statute of limitations from the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(e) and presuming that a delay of over three years was unreasonable).

[12]Because a genuine issue of material fact exists as to when Plaintiffs' had knowledge of the alleged copyright and trademark infringement, the Court denies summary judgment on Bitstream's laches defense and does not address the unreasonable delay and prejudice elements related to the copyright issues.

**CONCLUSION**

The Court grants Bitstream's Motion for Summary Judgment that Bitstream is not liable for directly infringing Plaintiffs' copyrights or trademarks and that Bitstream is not liable for vicariously infringing Plaintiffs' copyrights. Because genuine issues of material fact exist, the Court denies Bitstream's Motion for Summary Judgment on Plaintiffs' contributory copyright and indirect trademark infringement claims, Plaintiffs' DCMA claim, and Bitstream's laches defense.

DATED: April 21, 2005          ENTERED

                               _____
                               AMY J. ST. EVE
                               United States District Court Judge