IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MONOTYPE IMAGING, INC., a Delaware )
Corporation (f/k/a AGFA MONOTYPE CORP.) )
and INTERNATIONAL TYPEFACE )
CORPORATION, a New York corporation, )
)
    Plaintiffs, )
                            )
v. )
)
BITSTREAM INC., a Delaware corporation, )
)
    Defendant. )

Civil Action No. 03 C 4349
Judge St. Eve
Magistrate Judge Denlow

FILED
MAY 23 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## BITSTREAM INC.'S MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' PROPOSED EXHIBITS 15, 15A, 15B AND 16-19 AS HEARSAY, FOR LACK OF AUTHENTICATION, LACK OF RELEVANCE AND <u>VIOLATION OF THE COURT'S ORDER ON DISCOVERY</u>

Defendant Bitstream Inc. ("Bitstream") moves in limine to exclude Plaintiffs' proposed

Exhibits 15, 15A, 15B and 16-19 from evidence, and to prohibit reference to or argument

concerning them at trial. Copies of Plaintiffs' proposed Exhibits 15-19, which are printouts of

web pages allegedly showing the use of Bitstream's TrueDoc technology with Plaintiffs' font

software programs, are attached hereto as Exhibits A-E. Plaintiffs' proposed trial Exhibits 15,

15A, 15B and 16-19 should be excluded because they are hearsay, for lack of authentication, for

lack of relevance, and for violation of the Court's Order on discovery. In support of this motion,

Bitstream states as follows:

<u>BACKGROUND</u>

1.     Plaintiffs have brought this suit against Bitstream alleging contributory copyright

and trademark infringement and violation of the Digital Millennium Copyright Act ("DMCA"),

all arising out of the *alleged* use of Bitstream's TrueDoc software by Bitstream's licensees to

infringe Plaintiffs' alleged copyrights and trademarks in their font software programs. This case is scheduled for trial beginning on June 20, 2005.

2.      To establish liability for contributory copyright and trademark infringement, Plaintiffs must prove, as a threshold matter, that at least one of Bitstream's licensees has directly infringed a copyrighted font or trademark of Plaintiffs. *Marobie-Fl, Inc. v. National Ass'n of Fire Equip. Distrib. & Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1178 (N.D. Ill. 1997) (requiring direct copyright infringement); *Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004) (same), *cert. granted*, 125 S. Ct. 686 (2004); *David Berg & Co. v. Gatto Int'l Trading Co.*, 884 F.2d 306, 311 (7th Cir. 1989) (requiring direct trademark infringement). In other words, if Plaintiffs cannot prove that licensees of Bitstream's TrueDoc software have infringed any of Plaintiffs' copyrighted font software or trademarks, then Plaintiffs' copyright and trademark claims fail.

3.      The *only* alleged "evidence" of direct infringement by Bitstream's licensees that Plaintiffs have proposed presenting at trial are five printouts of web pages from the Internet. These printouts consist of three online tutorials and two demonstrations of the TrueDoc technology *allegedly* showing use of the TrueDoc technology with Plaintiffs' fonts. Specifically, Plaintiffs' proposed Exhibits 15-19 consist of the following:

- **Plaintiff's proposed Exhibit 15**: A printout of a tutorial on the "webmonkey" website, entitled "Embedding Fonts Tutorial," which Plaintiffs contend shows use of the TrueDoc technology with Agfa Monotype Corporation's Tempus Sans font software program on or before November 4, 1999 (the "webmonkey tutorial");

- **Plaintiffs' proposed Exhibit 16**: A printout of a tutorial on the "catdancer" website, entitled "Font Embedding Made Easy," which Plaintiffs contend shows use of the TrueDoc technology with International Typeface Corporation's ITC Highlander font software program on or before February 19, 1999 (the "catdancer tutorial");

2

- **Plaintiffs' proposed Exhibit 17**: A printout of a tutorial on the "eFuse" website, entitled "TrueDoc in Action," which expands on material in the catdancer tutorial and which Plaintiffs contend shows use of the TrueDoc technology with International Typeface Corporation's ITC Highlander font software program on or before February 19, 1999 (the "eFuse tutorial");

- **Plaintiffs' proposed Exhibit 18**: A printout of the "Dynamic Fonts" website, which Plaintiffs contend reflects use of the TrueDoc technology with International Typeface Corporation's Jokerman font software (undated) (the "Dynamic Fonts website"); and

- **Plaintiffs' proposed Exhibit 19**: A printout of the "DigitDesigns" website, which Plaintiffs contend reflects use of the TrueDoc technology with Plaintiffs' fonts (bearing a 1999 copyright date) (the "DigitDesigns website").

4.    Plaintiffs have indicated that they intend to offer these printouts at trial, and Bitstream is moving to exclude Plaintiffs' proposed Exhibits 15-19 in limine. These web page printouts are inadmissible for at least the following reasons: (i) the printouts are hearsay; (ii) the printouts are unauthenticated; and (iii) the printouts purportedly reflect use of the TrueDoc technology outside of the applicable three-year statute of limitations period governing copyright and trademark actions, and are therefore irrelevant under Fed. R. Evid. 402. Moreover, Plaintiffs' proposed Exhibits 18-19 should be excluded because they were not produced during discovery in violation of the Court's Order on discovery.[1]

## PROPOSED EXHIBITS 15-19 ARE HEARSAY

5.    Plaintiffs' proposed Exhibits 15-19, all printouts from third party Internet websites, are rank hearsay. The printouts consist of statements made by out-of-court declarants (the authors of the websites), which Plaintiffs are attempting to offer to prove the truth of the matter asserted (i.e., use of the TrueDoc technology with Plaintiffs' fonts). Accordingly,

---

[1] Notably, Bitstream previously moved to strike Plaintiffs' proposed Exhibits 18-19 in conjunction with its motion for summary judgment, based upon Plaintiffs' failure to timely produce the documents during discovery. In its Memorandum Opinion and Order, the Court did not rely on Plaintiffs' proposed Exhibits 18-19.

Plaintiffs' proposed Exhibits 15-19 fall squarely under the definition of hearsay set forth in Fed. R. Evid. 801. *See United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (defining hearsay pursuant to Rule 801). Since none of the hearsay exceptions set forth in Fed. R. Evid. 803 apply, the printouts are inadmissible at trial pursuant to Fed. R. Evid. 802.

6.      Significantly, the Seventh Circuit and other federal district courts have recognized the inherently unreliable and prejudicial nature of "evidence" procured from the Internet, and have ruled that such evidence is literally ***"adequate for almost nothing."*** *See, e.g., Jackson*, 208 F.3d at 637 (Seventh Circuit ruling that "[a]ny evidence procured off the Internet is *adequate for almost nothing*, even under the most liberal interpretations of the hearsay exception rules") (emphasis added) (quoting *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 775 (S.D. Texas 1999) (viewing the Internet as "one large catalyst for rumor, innuendo, and misinformation," stating there was "no way" plaintiff could overcome "the presumption that the information . . . discovered on the Internet is inherently untrustworthy")). There is simply no way of verifying the truth or completeness of the statements made in web page printouts. This is precisely the reason the hearsay rules exist. Therefore, Plaintiffs proposed exhibits 15-19 should be excluded. *See id.*

## PROPOSED EXHIBITS 15-19 ARE NOT AUTHENTICATED

7.      Even if Plaintiffs' proposed Exhibits 15-19 were not hearsay, the printouts should still be excluded because Plaintiffs cannot properly authenticate them under Fed. R. Evid. 901. Authentication is a condition precedent to admissibility, and "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

4

8.   To satisfy Rule 901, Plaintiffs need to show that the printouts of the online tutorials and demonstrations of the TrueDoc technology are what Plaintiffs purport them to be. However, Plaintiffs have failed to produce any authentication evidence during discovery and have not identified any evidence to be presented at trial that would properly authenticate the printouts. For example, Plaintiffs have not provided any evidence or proposed testimony to identify the authors of the websites, to establish the accuracy and truthfulness of the statements and representations made in the web tutorials, or to confirm the dates when the tutorials or presentations were prepared. Accordingly, this purported evidence cannot be properly authenticated as required under the Federal Rules of Evidence, and should be excluded by this Court. *See Jackson*, 208 F.3d at 637-38 (excluding web postings pursuant to Fed. R. Evid. 901, ruling web postings lacked authentication where plaintiff unable to show the postings were what she claimed them to be).

## PROPOSED EXHIBITS 15-17 AND 19 ARE IRRELEVANT

9.   A three year statute of limitations applies to copyright and trademark claims.[2] 17 U.S.C. § 507(b) (three-year statute of limitations for actions under the copyright statute, Title 17 of the U.S. Code); *Chattanoga Mfg., Inc. v. Nike, Inc.*, 140 F. Supp. 2d 917, 931-32 (N.D. Ill. 2001) (three-year statute of limitations for trademark infringement claims under the Lanham Act), *aff'd*, 301 F.3d 789 (7th Cir. 2002).

10.   For contributory infringement claims (the only claims at issue here), Plaintiff must prove that the third party direct infringement occurred within the statute of limitations period. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 890 (6th Cir. 2004) (contributory copyright infringement claim not timely where no acts of direct infringement

---

[2] Bitstream has pled the statute of limitations as an affirmative defense.

5

occurred within limitations period).  Direct infringement occurring more than three years prior to the lawsuit is irrelevant, since the actionable "contribution" would necessarily also have occurred outside the limitations period.

11.    Plaintiffs proposed Exhibits 15-17 and 19 all reflect conduct which occurred more than three years before the June 2003 filing date of this lawsuit.

(a)        Proposed Exhibit 15 (the webmonkey tutorial) was published on the Internet on or about November 4, 1999. *See* "webmonkey" tutorial cover page, attached as Exhibit F.[3]  Thus, the alleged acts of direct infringement reflected in the website must necessarily have occurred on or before November 4, 1999, and are therefore outside the statute of limitations period.

(b)        Regarding proposed Exhibit 16 (the catdancer tutorial), the first page of the printout indicates that the catdancer tutorial was published on the Internet on February 19, 1999.  Thus, the alleged infringing acts shown in the catdancer tutorial also occurred on or before February 19, 1999, and are necessarily outside of the limitations period.

(c)        Proposed Exhibit 17 (the eFuse tutorial) was simply an expansion of the catdancer tutorial, and the February 19, 1999 date therefore applies to proposed Exhibit 17 as well.

---

[3] The online index which accompanies the web monkey tutorial indicates a publication date of November 4, 1999. Not surprisingly, Plaintiffs did not include the website's online index showing the November 1999 date with their proposed Exhibit 15. This index and date should be considered contemporaneously with Plaintiffs' proposed Exhibit 15. *See* Fed. R. Evid. 106 (allowing party, upon introduction of writing or recorded statement by adverse party, to "require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it").

(d)     Proposed Exhibit 19 (the DigitDesigns website) bears a copyright date of 1999. Thus, the alleged infringing acts shown in the DigitDesigns website also occurred in or before 1999, and are necessarily outside of the limitations period.

12.     Accordingly, all of the alleged incidences of direct infringement reflected in Plaintiffs' proposed Exhibits 15-17 and 19 occurred more than three years prior to Plaintiffs' commencing this suit, and may not properly be considered as evidence of direct infringement under the applicable three-year statutes of limitations. These Exhibits, therefore, are irrelevant and inadmissible under Fed. R. Evid. 402.

13.     In Plaintiffs' opposition to Bitstream's motion for summary judgment, Plaintiffs argued, without explanation, that the three-year statute of limitations period did not run on the webmonkey tutorial because the tutorial still appears on the Internet, and "the limitations period for copyright law does not begin to run on a continuing violation until the wrong is over." Plaintiffs' Opp. at 6 (citing *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983)). Even if the *Taylor* rule applied here (which it does not), this argument doesn't save exhibits 15-17 and 19, because Plaintiffs have offered *no evidence* of any "continuing violation."

14.     The continuing violation rule allows a plaintiff to recover damages for a series of related acts, even though the earlier acts occurred outside of the limitations period. *Taylor*, 712 F.2d at 1118-19. The doctrine requires that the plaintiff prove there was a continuing violation, which exists when the first wrongful act does not create a separate, complete action, but instead marks the first step in a pattern of wrongful, related conduct. *In re Gaslight Club, Inc.*, 167 B.R. 507, 520 (Bankr. N.D. Ill. 1994) (*citing Taylor*, 712 F.2d at 1119)). Notably, however, "[f]or the [continuing violation] doctrine to apply, at least one violation must have occurred within the statutory period, entitling the plaintiff to relief for that wrong alone." *Forster Music Publisher,*

7

*Inc. v. Price Stern Sloan, Inc.*, No. 93-C-4487, 1995 WL 239093, at *3 (N.D. Ill. April 21, 1995) (copy attached as Ex. G).

15.     Here, the only evidence Plaintiffs offer regarding the tutorials and websites is the printouts, which were dated in 1999. These at most show acts of alleged direct infringement committed by the authors of the web pages in or before 1999. Plaintiffs have no evidence these authors committed any related "continuing violations" in or after 2000. Thus, Plaintiffs cannot show the "continuing harm" during the statutory limitations period required to make the 1999 printouts potentially relevant. *See Forster*, 1995 WL 239093, at *3.

16.     Plaintiffs also have no evidence that anyone else, other than the website authors, ever followed these web tutorials, using Plaintiffs fonts, during the three-year limitations period.

17.     Accordingly, the printouts of web tutorials shown in proposed Exhibits 15-17 are not evidence of any direct infringement occurring within the three-year statute of limitations period, and are irrelevant and inadmissible under Fed. R. Evid. 402.

### PROPOSED EXHIBITS 18-19 WERE NOT PRODUCED DURING DISCOVERY IN VIOLATION OF THE COURT'S ORDER ON DISCOVERY

18.     Plaintiffs' proposed Exhibits 18-19 should also be excluded because Plaintiffs failed to produce them during discovery. Thus, they are in violation of the Court's Order on discovery. *See Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02-C-3293, 2004 WL 2367740, at *3 (N.D. Ill. Oct. 15, 2004) (ruling defendant's failure to produce its tax returns and other requested evidence during discovery prevented defendant from introducing such evidence at trial) (copy attached as Ex. H).

19.     The Court's Order dated December 11, 2003, set the close of fact discovery for February 13, 2004.

20.     In Bitstream's First Set of Requests for Production of Documents and Things, served October 2, 2003, Bitstream requested all documents concerning or evidencing alleged instances of copyright infringement and trademark infringement.  Plaintiffs agreed in their Response to produce all responsive documents.  *See* Ex. I, Plaintiffs' Responses to Defendant's Requests for Production Nos. 19-21.

21.     Plaintiffs did not produce proposed Exhibits 18-19 before fact discovery closed in February 2004.  Rather, Plaintiffs provided these printouts for the first time in connection with their opposition to Bitstream's motion for summary judgment on December 3, 2004, *ten months* after the close of fact discovery.

22.     Moreover, in connection with the summary judgment briefing, Plaintiffs' employee/expert testified by declaration that he discovered the Dynamic Fonts website and the related printout (Plaintiffs' proposed Exhibit 18) in February 2004, and the printout of the Dynamic Fonts website provided by Plaintiffs last December is dated February 27, 2004.  He also testified that he discovered the DigitDesigns website (Plaintiffs' proposed Exhibit 19) in November 2004, although the printout bears a copyright date of 1999.  Ex. J, Levantosky Dec., at ¶¶ 9-10.  Plaintiffs have never explained why they did not search for and produce these materials during the discovery period, and why they did not promptly produce them when their employee/expert located them.

23.     Plaintiffs should not be allowed to present this new "evidence" for the first time outside of discovery, without any prior notice to Bitstream, and use the alleged evidence at trial. Bitstream did not have an opportunity to conduct discovery regarding these new allegations of direct infringement, and would be unduly prejudiced if the exhibits are admitted at trial.

24. Accordingly, proposed Exhibits 18 and 19 should be excluded under Federal Rule of Civil Procedure 26 and 37(c)(1) as violative of the Court's Order on discovery. *See Telewizja Polska USA, Inc.*, 2004 WL 2367740, at *3.

## NEW PROPOSED EXHIBITS 15A AND 15B SHOULD BE EXCLUDED

25. On Saturday, May 21, 2005, Plaintiffs added new proposed Exhibits 15A and 15B to their trial exhibit list. According to Plaintiffs' revised exhibit list:

(a) New proposed Exhibit 15A is "Screen Printouts of WebMonkey Site 'Embedding Fonts Tutorial' as it appears to Viewer"; and

(b) New proposed Exhibit 15B is "Lycos Lycos Terms and Conditions as appearing at http://info.lycos.com/legal/legal.asp."

Plaintiffs have not provided Bitstream with copies of either new proposed exhibit.

26. These two new proposed exhibits should also be excluded for at least the following reasons: (a) they are hearsay; (b) they are not authenticated; and (c) they were not produced during the discovery period in violation of the Court's Order on discovery. (In fact, they still have not been produced.) As was the case with Exhibits 15-19, new proposed Exhibits 15A and 15B were obtained from the Internet, and are hearsay and lack authentication. Moreover, as was the case with Exhibits 18-19, these proposed exhibits were produced after the discovery period in violation of the Court's Order on discovery.

27. Moreover, by Plaintiffs' own admission, proposed Exhibits 15A and 15B are irrelevant. On May 21, 2005, Plaintiffs' counsel sent Bitstream's counsel an email stating that "Exhibits 15A and 15B relate to [Bitstream's] fair use defense." Ex. K. Bitstream, however, has decided not to amend its pleadings to add an affirmative defense of fair use, and will not be pursuing the fair use defense at trial. *See* Bitstream Inc.'s Opposition to Plaintiff's Motion for

Leave to Take the Deposition of Witness on Issue of Fair Use for Use at Trial. Thus, new proposed Exhibits 15A and 15B are irrelevant, and should be excluded under Fed. R. Evid. 402.

WHEREFORE, for all of the reasons set forth above, Bitstream respectfully requests that the Court grant the present motion, and thus exclude Plaintiffs' proposed Exhibits 15, 15A, 15B and 16-19 from evidence and prohibit reference to or argument concerning them at trial.

Respectfully submitted,

Peter C. John
Eric R. Lifvendahl
Williams, Montgomery & John
20 North Wacker Drive
2100 Civil Opera Building
Chicago, Illinois 60606-3094
(312) 443-3200

Jeffrey L. Snow
Daniel E. Rosenfeld
Kirkpatrick & Lockhart
  Nicholson Graham LLP
75 State Street
Boston, Massachusetts 02109
(617) 261-3100

Attorneys for Defendant Bitstream Inc.

Dated: May 23, 2005

# EXHIBIT A

  
# <u>webmonkey</u>/design/

# Embedding Fonts Tutorial

by <u>Steve Mulder</u>

In <u>Lesson 1</u> of this tutorial, we took a brief look at both embedded font formats (Microsoft's Embedded OpenType and Netscape's TrueDoc) and then dove into a step-by-step lesson on how to create Embedded OpenType fonts and embed them in Web pages.

In this lesson, we'll take on the other format, TrueDoc. We'll examine what it has to offer, learn how to create TrueDoc fonts and embed them in pages, and find out what issues we have to worry about. We'll also talk about how to make sure your embedded font is seen by users of *both* browsers.

In a nutshell, Netscape and Bitstream's TrueDoc format works like this: You use a tool to record the shapes of the characters of a font and then save those shapes into a .pfr (portable font resource) file, which gets linked to an HTML document. On the receiving end, the browser has a built-in character shape player that knows how to read this shape information and turn it into a font for display. So unlike with Embedded OpenType, you're sending character shape information across the Net, not an actual font file.

But just like Embedded OpenType, TrueDoc fonts are tied to a specific URL or domain name, so other Web developers can't use your embedded fonts on their pages. You can also embed just the characters you're using, not the whole font.

Here are the key benefits of TrueDoc over Microsoft's Embedded OpenType:

- TrueDoc is more secure. You're not sending actual font files, so it's much more difficult for users to take your embedded font and install it on their systems. Netscape and Bitstream call this DocLock.

- Both of the major browsers can see TrueDoc embedded fonts. Well, sort of. More details on this later.

- Type 1 fonts can be used as well as TrueType fonts.

- You can (in theory) place more than one font in a .pfr file, which means fewer connections to the server.

- There is progressive rendering: The Web page appears immediately using the default font. Then, after the .pfr file is loaded, the screen redraws with the embedded font. While a bit unnerving for the user, perhaps, it's faster.

- There are mult  (cross-platform) tools for creating  ₂Doc fonts (see the next page).

The drawbacks of TrueDoc:

- Cross-browser support is still a little rough.

- The official tool used to create TrueDoc fonts isn't as robust as the WEFT tool (used with Embedded OpenType), as we'll see.

- Onscreen font quality might be slightly decreased, because TrueDoc fonts don't include the outlines and hintings of the original fonts.

That said, are you ready to create TrueDoc fonts? Me too.

## Creating TrueDoc Fonts with WebFont Maker
First, you'll need a tool. Your choices follow:

- WebFont Maker (comes with more than 200 TrueType fonts) — Windows and Mac, US$199, demo version available

- HexWeb Typograph — Windows and Mac (also available as a BBEdit plug-in), US$149, demo versions available

We'll be focusing on WebFont Maker, but if you use HexWeb Typograph, the font embedding process is similar.

### Step 1: Build your Web page

As with Embedded OpenType, using TrueDoc embedded fonts in an HTML page can be done in two different ways.

- You can drop your new font into the usual HTML <FONT FACE="xyz"> tag, like so:

   <FONT FACE="Tempus Sans ITC">Text goes here.</FONT>

- Or you can use the font-family property of cascading stylesheets (CSS). (Visit the Stylesheets Tutorial to learn all about the many ways you can apply styles to Web page content.) A common way to do this is with a linked stylesheet, in which the HTML document is linked to an external stylesheet file (.css). For example, a file named core.css might contain this stylesheets rule:

   P { font-family: "Tempus Sans ITC"; }

The <HEAD> of the HTML documents would contain this line:

   <LINK REL=stylesheet HREF="core.css" TYPE="text/css">

With this stylesheet applied, the Tempus Sans ITC font would be used for all <P> text in the Web page.

OK, now let's go ahea    nd start using WebFont Maker.

## Choose Your Fonts and Characters

### Step 2: Select the fonts

WebFont Maker works as a wizard that takes you step-by-step through the process of making a TrueDoc font file. When you launch the application, the first screen describes the overall process. Click Next.

On the next screen (shown below), you're asked to select the font to embed.



If you select a font with multiple styles available (Bold, Italic, etc.), you can also specify that here. Sadly, you can only do one font at a time, so if you're embedding multiple fonts or even multiple styles of the same font, you'll be going through the wizard many times. (Ideally, you could embed multiple fonts into one final .pfr file, but alas that option isn't available.)

If you're developing pages for a North American audience, use the Western script. But there are other options for some fonts that go beyond the boring old Western character set. (Note: Included with WebFont Maker are fonts with the WGL4, Windows glyph list 4, character set that include Greek, Turkish, and other characters.)

When you're ready, click Next.

### Step 3: Select the characters

Now that you've selected the font to embed, you need to choose which characters of the font will be embedded.



Your have three options:

- Standard — This version embeds 94 common characters, including A to Z, a to z, 0 to 9, and common punctuation.

- Complete — The complete set of all the Windows characters (up to 213 of them) are embedded, including accented and international characters.

- Custom — Use this option to embed only the characters you specifically choose.

As always, the fewer the characters embedded, the smaller the final font file, and the faster the download. So Custom is a good idea when you're not using the whole font on a page.

The bad news is that unlike WEFT, WebFont Maker can't analyze a page and figure out which characters you're using. You have to do that manually. To do so, select the Custom radio button and click the Specify Characters ... button.

On the new screen (below), you can either select a predefined set of characters from the pulldown menu (but why would you do that?), or you can manually type in the characters you want embedded. The easiest solution is to simply copy and paste the text from your Web page into the white area. Then hit OK.



One nice feature is that WebFont Maker will remember the custom character set you used the last time you ran the wizard. To reuse that set of characters, select "(saved)" from the pulldown menu.

Back on the main character selection, click Next to continue.

## Create the Font File
### Step 4: Select the location to which your font file will be limited

You don't want other Web authors using your font files. So this next screen is where you specify which directories can access your font file. Type the URL of the final destination of your site, making sure it begins with "http://." You can go down to the specific directory, or you can just enter the server name (in which case, your font will work for all pages on the server, not just pages in a specific directory). Also, make sure to enter every variation of your server, such as http://www.webmonkey.com *and* http://webmonkey.com.



You don't need to add the local location of your site (on your hard drive), because Web pages with embedded TrueDoc files will always work locally.

Note: TrueDoc fonts might not display in Navigator 4.5 or higher on a Macintosh if you created the fonts using a PC.

For each URL, click Add to add it to the list. You can add as many as you want. When you're finished, click Next.

### Step 5: Name and create the font

OK, last screen! You name your font file anything you like. But make sure it ends with .pfr, or it won't work.



You also need to tell .bFont Maker where to put the font ₁ it creates. Click on Browse ... to choose the directory on your hard drive. Then click Save.

Finally, you need to click Finish to, er, finish. You should then see a lovely confirmation message telling you that your font file has been created.

But wait, you're not quite done....

## Update Your Code and Finish

### Step 6: Update the HTML document

When it created your new TrueDoc font file, WebFont Maker was also kind enough to create a ReadMe file in the same directory. Open it in your favorite Web browser. It provides valuable information about updating your HTML document so that the embedded font will work. Make sure you do the following:

- Match the font name you use in the body of your page to what is shown in the ReadMe file.

- For your embedded font, use only the characters shown in the ReadMe document. Additional characters won't work.

- Copy and paste the code that's provided into the <HEAD> of your HTML file. It will look something like this:

```
<LINK REL=fontdef SRC="tempus.pfr">

<SCRIPT SRC="http://www.bitstream.com/wfplayer/tdserver.js"
TYPE="text/javascript"></SCRIPT>
<LINK>
```

The SRC of the <LINK> tag should, of course, point to the font file and can be a relative or absolute URL.

The JavaScript is required to make the TrueDoc font work in Internet Explorer for Windows. It points to a WebFont Player ActiveX control that is hosted on the Bitstream Web site. You can also find out how to download the ActiveX control and host it on your own server. (There will be more on this ActiveX control on the next page.)

All this code must appear in every HTML document that contains an embedded TrueDoc font.

### Step 7: Test your page

Your embedded font should now be working in Netscape Navigator (Windows and Mac) and Internet Explorer (Windows)! But testing can be difficult because you already have the font installed on your system, so you can't really tell if the embedded font file is working. Try temporarily removing the font from your system and then testing it on a different system that doesn't have the font.



**The big news:**

*Font embedding is here at last!*

May Web typography blandness forever be banished.

Don't forget that not everyone will see your embedded font. Only users of Navigator 4.03 and higher and IE for Windows 4 and higher will benefit. So you should also add backup font names like Times New Roman or Arial — something you know all users will have installed.

You can now upload your HTML pages (and the .pfr files) to your server as usual (make sure to transfer the .pfr files in *binary* — not ASCII — transfer mode), and you'll be done.

The one thing to make sure of is that the Web server hosting your files has been set up to recognize the PFR MIME type. The MIME type is application/font-tdpfr (you should probably have the Web site administrator take care of this).

Now let's look at what IE users will experience with TrueDoc fonts.

### The Sad Truth About TrueDoc and IE
As I mentioned earlier, Navigator 4.03 and higher (Windows and Mac) support TrueDoc fonts natively, but Internet Explorer doesn't come with WebFont Player built in.

Fortunately, Bitstream has provided an ActiveX control version of WebFont Player. When users of Windows IE (version 4 or higher) come to a page that has TrueDoc embedded fonts, they see the screen shown below.



The information is a bit cryptic, but if the user agrees and clicks Yes, a 60-KB ActiveX control will be downloaded and installed automatically. Once it's on the machine, any TrueDoc fonts encountered will display without incident.

Please note that there is a known problem with IE 5 displaying TrueDoc fonts, even with the ActiveX control installed. (Bitstream is working on a solution.)

When the ActiveX control is working in IE, here's what it looks like:



Note that embedded fonts appear aliased (i.e., jagged) if font smoothing isn't turned on in the Display Properties control panel. When font smoothing is on, it looks much prettier:



The bad news: This ActiveX control is only available on the Windows side. Macintosh IE users cannot see TrueDoc fonts, period. It's very, very annoying.

All that said, which format is the better choice for developers — Embedded OpenType or TrueDoc? Is there any way to make embedded fonts viewable to everyone? What's the final word? Click onward for answers, my monkey friend.

## The Final Word

If I had to pick one final word on the subject of embedded fonts, it would be this: Sigh.

We're close, so close, to having an easy-to-use solution that serves our needs and desires. But we're not quite there.

In the Embedded OpenType versus TrueDoc wars, TrueDoc has the advantage because of its IE support via the ActiveX control panel. But the Embedded OpenType tool (WEFT) is more robust than the official TrueDoc tool, WebFont Maker. Sigh again. I wish the people behind the embedded fonts tools would collaborate a little.

All that said, here are your two best options for now.

- Use TrueDoc and make sure you link to the ActiveX control for IE support. You won't cover Mac IE users this way, but you will cover the vast majority of users.

- If Mac IE users are important to your site, embed *both* TrueDoc and Embedded Open Type fonts. This means double the work, because you'll have to create each font file twice, but this will guarantee the most browser coverage and avoid the awkwardness of IE Windows users having to install an ActiveX control.

    The <HEAD> of your HTML document will need to contain code for both formats, which will look something like this:

    ```
    <LINK REL=fontdef SRC="tempus.pfr">
    <LINK>

    <STYLE TYPE="text/css">
    <!--
    @font-face {
    ```

```
font-family: 'Tel   us Sans ITC';
font-style: normal;
font-weight: normal;
src: url(TEMPUSS0.eot);
}
-->
</STYLE>
```

The first bit of code is for TrueDoc, and the last bit is for Embedded OpenType.

And finally, if you use Embedded OpenType, remember to use stylesheets (not <FONT FACE>) to apply your font to the page, or Mac IE users might never see it.

And so we come to the end of our embedded font journey.

# Rise up, ye monkeys, to a universe of fonts!

*Steve Mulder is manager of information architecture in the user experience group of Terra Lycos, where he wears as many hats as possible. He pretends to know a lot about design strategy, interaction design, usability, writing for the Web, and Web development.*

# EXHIBIT B





CD Home < Web Review < 1999 < Feb 19

**Designers**

Embedded Fonts in Action

By Daniel Will-Harris

### Font Embedding Made Easy

In writing this article **I prepared a few pages using TrueDoc**. I decided to choose the fonts ITC Highlander and gmNanogram so people would be able to differentiate between them and the "standard" fonts used by most browsers.

I created the pages using **NetObjects Fusion**, and added the TrueDoc HTML codes just once, in a "MasterBorder" so that it would automatically be applied to every page in the site.

It took all of about two minutes to generate the PFR's, then copy the HTML into NetObjects Fusion. I uploaded the site -- and it worked on both IE4 and Navigator 4.

If there's one slightly klunky part of the procedure, it's when you want to test your page. You first need to temporarily remove the fonts you embedded from your system. Otherwise, you will simply see the fonts from your system instead of the fonts you embedded. I used Bitstream's Font Navigator to group fonts so it's easy to install and remove them by just dragging an icon in the program. Next, even when you test your file locally, your browser will want to connect before it displays the page. This is minor, to be sure, but it can still be annoying.

### Upside/Downside

Bitstream's WebFont Wizard is easy to use, it's secure, the fonts are small so they download quickly, and the whole thing actually works. So, should you use it?

The simple answer is: Yes, if you want the utmost control over the text on your Web pages.

The technology is simple, effective, and doesn't get in the way. Your

text is still perfectly visible in older browsers, so you're not excluding anyone.

And why might you not want to use TrueDoc? There are a few minor drawbacks that I have heard people complain about: When someone views the page in Navigator, TrueDoc fonts are automatically anti-aliased (made to look smoother using gray-scale technology). This works even on computers using 8-bit graphics. Some people like this (I know I do). They find that it makes even delicate faces like Garamond readable on-screen, something they would otherwise not be.

However, some people don't like this. They think anti-aliased fonts look fuzzy. It can also slow down the display of text on-screen. Under Navigator you can turn TrueDoc font-enabling off under Edit/Preferences/Fonts (select disable Dynamic Fonts). But you can't keep TrueDoc on, and anti-aliasing off. Maybe this will be possible in Navigator 5.0?



*Figure 5:* Here's how TrueDoc fonts look in Netscape Navigator 4.0, with its built-in anti-aliasing. Most people say that fonts look smoother this way, though a minority think that anti-aliasing makes the type look fuzzy.

In IE, you don't get automatic anti-aliasing, which can make the fonts

look rough. The only way to get true anti-aliasing under IE (even with Microsoft's own embedding system) is to **download Microsoft's Font Smoothing extension for Windows**. Even then, you need to be running graphics at 16-bit or higher. IE users can also tell IE to ignore font style and size settings on Web pages through View/Internet Options/Accessibility. Most average computer users aren't going to go through this trouble, but since the same is true of Microsoft's own system, and I've heard very few of these complaints; I'd consider this minor.

The Wizard itself has only two notably omissions that will hopefully be corrected in future versions. The Wizard only produces PFRs that contain a single typeface. So if you have multiple fonts on your page or site, you need multiple PFRs. It would be more convenient if you could have a single PFR that contained multiple typefaces, especially multiple styles of the same face (for example, "Highlander Medium and Highlander Italic). It would also be more efficient to be able select all of the fonts you wanted converted at once, rather than one at a time. The optimal solution, of course, would be for TrueDoc to be built into Web authoring software, so you just used the fonts you wanted: The software would make the PFR's, add the HTML, and the whole process would be transparent.

Even so, the current system is simple and it works. If you're not sure if it will work for you, go to **the TrueDoc Web site** to try their free service and see what kind of feedback you get from visitors to your site.

So here's a new Web technology that is extremely useful, efficient, and non-intrusive. If the look and feel of your Web pages is important to you, I would highly recommend you try the WebFont Wizard for yourself.

**Embedded Fonts in Action**

Copyright © 2003 CMP Media LLC

# EXHIBIT C



# TrueDoc in Action



If you're using a V4 browser,
At first you'll see this text in your normal browser font
then, after a few seconds
all the fonts on this page

## should appear in a typeface

# you may not have seen

# on your screen before.

Yet none of these fonts are graphics. The text you're reading
here, even the script heading above, they're all just text--
swipe over them with your mouse and see.

This is all made possible through Bitstream TrueDoc, software
that lets you embed fonts onto web pages.

This is gmNanogram
Since it's text,

you can set it

AT ANY SIZE

# This is ITC Highlander

These are fonts, not graphics. The advantage is that you can
get all the emotional impact of the typefaces you want,
without having to set all your text as graphics. So your text
downloads fast, is indexed by search engines, and is still

M 7206

available even to those with older browsers, text-only browsers, or those who view the web with graphics turned off

To read about TrueDoc in more detail, click here

If you decide to buy the Bitstream WebFont Wizard, call 1-800-522-3668 or 617-497-6222 and mention *eFuse* to get get 25% off. Pretty good, huh?

Click here to see another TrueDoc example. And another!

 

[TrueDoc] [Georgia] [Wild!] [Script]

Visit eFuse, the friendly place to learn how to build a better web site



# EXHIBIT D

I want the latest Javascripts
and I want them now!!!

Nic's JavaScript Page - Free JavaScript Examples for your Site

# Dynamic Fonts

## Programming Archive

- Main Page
- CSS
- XML (Active Channel)
- Java/Script
- Site Promotion
- Others

If the codes for placing Dynamic Fonts on your page do not show up, press here or reload this page.

Have to make a GIF image for every HTML document on your page because you want that "special font" on there? If so, don't go through the hassle of GIFs, use Dynamic Fonts instead. Dynamic Fonts are a condensed font file (FPR) that can be imported to a user's computer for use on the web. Unlike GIFs, Dynamic Fonts are made with typing text in a FONT tag, thus if you make a typo, you won't have to make a new image. Also, Dynamic Fonts are cached so that you only need to call them once on your index page, then you can use them for all the HTML documents on your page.

To start make Dynamic Fonts, you need to download a typograph. The best free typograph that I have seen is HexMac's Typograph (which you can download by clicking on the previous link). The download is only about 2 megs worth. Once you have downloaded the Typograph, you will need to "burn" a font file. This is pretty self-explanatory once you get the software. Once you have done this, come back to the tutorial, then you will learn how to put Dynamic Fonts on your page...

Alright, now that you have downloaded the Typograph and made your PFR file, double-check some things. Is the web page you put in when your "burned" the font the same as the domain under which your page is hosted (www.mypage.com, members.server.com, etc.)? Now, if you have Geocities as your web page provider, you need to download the PFR file to a different server (GC doesn't support the PFR file type). Do make sure, however, that your listed domain in the Dynamic Font file is //www.geocities.com even though the actual PFR file might not be located there. Also, be sure you remember the initial name of the font that your "burned" along with the PFR name.

Ok, to put Dynamic Fonts on a web page for viewing, you use the below code

<LINK REL=FONTDEF
SRC="http://www.yourserver.com/fontname.pfr">

In the SRC, you put the URL location where you saved the PFR file. The code doesn't stop there though. Unfortunately, Internet Explorer didn't originally have Dynamic Font support, so TrueDoc came up with a script that allows IE support. For the IE code, you'll first need to download the below file and upload it onto your server.

nsfontfix.js

Once you have that done, put the following code IMMEDIATELY AFTER the previous code

<SCRIPT LANGUAGE="JavaScript" SRC="msfontfix.js">

</SCRIPT>
<link>

Now you have cross-browser support for the Dynamic Font of your choice. Putting the actual Dynamic Font on your page is not difficult at all. Have you still remembered the original name of the font before you "burned" it? Good, because we need to use it in the FONT tag like so

<font face="YourFontsName">This is Some Dynamic Font</font>

You put the original font name under FACE. Be sure that it is capitalized correctly and that it has spaces where needed. See, it wasn't so tough to make Dynamic Fonts. An example of Dynamic Fonts in action is the title of this page. Believe it or not, that is a Dynamic Font. Dynamic Fonts only look slightly different from the ugly GIF files you've used before, and are a great addition to anyone's page.

Below are a list of font's that do not need to be made into Dynamic Fonts because they accompany the Windows3.x and later software

Arial
Comic Sans MS
Courier
Snap ITC
Times New Roman
✦)(■𝒴♭♌)(■𝒴♭• (WingDings)


Other resources..

TrueDoc
HexMac

Do you have a Dynamic Font Resource? Add it here.

```html
<HTML>
<HEAD>
<TITLE>Uncanny Programming - Dynamic Fonts</TITLE>
<META name="description" content="This is a tutorial in the CSS section of Uncanny
Programming.  It is about how to put Dynamic Fonts on your page and how they help
your page look better.">
<META name="keywords" content="dynamic, fonts, font, css, page, programming,
tutorial, hexburn, truedoc, help">
<META http-equiv="Page-Enter" content="revealTrans(Duration=5.0,Transition=12)">
<STYLE TYPE="text/css">
<!--
A:hover {color:#ff00ff;}
BODY {font-size:12pt; font-family:"Times New Roman";}
//-->
</STYLE>
<script language="Javascript1.2">

<!--
// please keep these lines on when you copy the source
// made by: Nicolas - http://ucprogramming.hypermart.net

var url = document.location.href;
var which;

(url.indexOf("server9") != -1) ? which = "jokerman2.pfr" : which = "jokerman.pfr";

document.write("<LINK REL='FONTDEF' SRC='"+which+"'>");
//-->

</script>
<SCRIPT LANGUAGE="JavaScript" SRC="msfontfix.js">

</SCRIPT>
<link>

<script language="JavaScript">
<!-- // cloak
window.open('http://www.hypermart.net/ccpopup2.bml', 'IMPORTANT', 'toolbar=no,
location=no, directories=no, status=no, menubar=no, width=500, height=275');
// -->
</script>
        </HEAD>
<BODY TEXT="800000" background="../back.gif" LINK="#800080" ALINK="#ff00ff"
VLINK="#800080">
<script language="Javascript" src="../bnrs/ranban.js"></script>
<table>
<tr>
<td width="170"></td>
<td width="5"></td>
<td><font size="24pt" face="Jokerman" color="004F00">Dynamic Fonts</font><br></td>
</tr>
<tr>
<td width="170" valign="top">
<font size="+1"><b>Programming Archive</b></font><br>
<br>
<li><a href="../index.html">Main Page</a>
<br>
<li><a href="../css/index.html">CSS</a>
<li><a href="../xml/index.html">XML (Active Channel)</a>
<li><a href="../javascript/index.html">Java/Script</a>
<li><a href="../promotion/index.html">Site Promotion</a>
<li><a href="../other/index.html">Others</a><br>
<br>
```

If the codes for placing Dynamic Fonts on your page do not show up, <a
href="javascript:document.location.reload()">press here</a> or reload this page.
<img src="../line.gif" width="170">
</td>
<td width="5">
</td>
<td valign="top">
Have to make a GIF image for every HTML document on your page because you want that
"special font" on there? If so, don't go through the hassle of GIFs, use Dynamic
Fonts instead. Dynamic Fonts are a condensed font file (FPR) that can be imported
to a user's computer for use on the web. Unlike GIFs, Dynamic Fonts are made with
typing text in a FONT tag, thus if you make a typo, you won't have to make a new
image. Also, Dynamic Fonts are cached so that you only need to call them once on
your index page, then you can use them for all the HTML documents on your page.<br>
<br>
To start make Dynamic Fonts, you need to download <a
href="http://www.hexmac.com:8080/download/index.html">a typograph</a>. The best
free typograph that I have seen is HexMac's Typograph (which you can download by
clicking on the previous link). The download is only about 2 megs worth. Once you
have downloaded the Typograph, you will need to "burn" a font file. This is pretty
self-explanatory once you get the software. Once you have done this, come back to
the tutorial, then you will learn how to put Dynamic Fonts on your page...<br>
<br>
Alright, now that you have downloaded the Typograph and made your PFR file,
double-check some things. Is the web page you put in when your "burned" the font
the same as the domain under which your page is hosted (www.mypage.com,
members.server.com, etc.)? Now, if you have Geocities as your web page provider,
you need to download the PFR file to a different server (GC doesn't support the PFR
file type). Do make sure, however, that your listed domain in the Dynamic Font file
is //www.geocities.com even though the actual PFR file might not be located there.
Also, be sure you remember the initial name of the font that your "burned" along
with the PFR name.<br>
<br>
Ok, to put Dynamic Fonts on a web page for viewing, you use the below code<br>
<br>
<font color="#ff0000">&lt;LINK REL=FONTDEF
SRC="http://www.yourserver.com/fontname.pfr"&gt;</font><br>
<br>
In the SRC, you put the URL location where you saved the PFR file. The code doesn't
stop there though. Unfortunately, Internet Explorer didn't originally have Dynamic
Font support, so <a href="http://www.truedoc.com">TrueDoc</a> came up with a script
that allows IE support. For the IE code, you'll first need to download the below
file and upload it onto your server.<br>
<br>
<a href="msfontfix.js">msfontfix.js</a><br>
<Br>
Once you have that done, put the following code IMMEDIATELY AFTER the previous
code<br>
<br>
<font color="#ff0000">
&lt;SCRIPT LANGUAGE="JavaScript" SRC="msfontfix.js"&gt;<br>
<br>
&lt;/SCRIPT&gt;<br>
&lt;link&gt;</font><br>
<br>
Now you have cross-browser support for the Dynamic Font of your choice. Putting the
actual Dynamic Font on your page is not difficult at all. Have you still remembered
the original name of the font before you "burned" it? Good, because we need to use
it in the FONT tag like so<br>
<br>
<font color="#ff0000">&lt;font face="YourFontsName"&gt;This is Some Dynamic
Font&lt;/font&gt;<br></font>
<br>

```
You put the original font name under FACE.  Be sure that it is capitalized correctly
and that it has spaces where needed.  See, it wasn't so tough to make Dynamic Fonts.
 An example of Dynamic Fonts in action is the title of this page.  Believe it or
not, that is a Dynamic Font.  Dynamic Fonts only look slightly different from the
ugly GIF files you've used before, and are a great addition to anyone's page.<br>
<br>
Below are a list of font's that do not need to be made into Dynamic Fonts because
they accompany the Windows3.x and later software<br>
<br>
<font color="#ff0000"><font face="Arial">Arial</font><br>
<font face="Comic Sans MS">Comic Sans MS</font><br>
<font face="Courier">Courier</font><br>
<font face="Snap ITC">Snap ITC</font><br>
<font face="Times New Roman">Times New Roman</font><br>
<font face="WingDings">WingDings</font> (WingDings)<br></font>
<br>
<br>
Other resources..<br>
<br>
<a href="http://www.truedoc.com">TrueDoc</a><br>
<a href="http://www.hexmac.com">HexMac</a><br>
<br>
<a href="mailto:ucprogramming@bitsmart.com?subject=Add Dynamic Font Resource">Do you
have a Dynamic Font Resource?  Add it here.</a>
</td>
</tr>
</table><br>
<br>
<br>
<br>
<!--#echo banner=""-->
</BODY>
</HTML>
```

# EXHIBIT E

DigIt
Designs



WebType

# TrueDoc WebType Samples

The following samples demonstrate the appearance of a
selection of typefaces rendered as a TrueDoc dynamic
fonts in a variety of point sizes from 8 to 72, plus samples
of running text in four sizes from 8 to 14 points.

Since not all fonts render equally well as TrueDoc fonts,
these samples will be useful for the designer who is
considering which fonts to convert to TrueDoc dynamic
fonts for use on the world wide web.

Netscape Navigator 4.03 (and up) or Microsoft Internet
Explorer 4.0 (and up) will be necessary to view these fonts.

Windows 98 users will have better results from dynamic
fonts by going to Control Panel > Display > Effects and
checking the box for "smooth edges of screen fonts".
Windows 95 users will have to download MicroSoft's font
smoothing patch to acquire this option. Even with this
extra step, I find that results for Internet Explorer continue
to return some inexplicably jagged edges for quite a
number of fonts that work fine with Netscape 4.5.
Unfortunately, Internet Explorer for Macintosh does not
support dynamic fonts at all.

More information about TrueDoc dynamic fonts can be
found at the TrueDoc and Bitstream websites.

## Sans Serif Fonts

Abadi MT Condensed
Abadi MT Condensed Extra Bold
Charlotte Sans Book
Charlotte Sans Medium
Charlotte Sans Bold
Humana Sans ITC
Humana Sans Md ITC
Lucida Sans
Lucida Sans Unicode

igIt ...gns ...:Do.. ..:bT)... ...ireu..../

ITC Officina Sans Book
TektoMM
Tempus Sans ITC

## Serif Fonts

AGaramond
AGaramond Bold
American Typewriter Condensed
American Typewriter Medium
Benguiat
Bookman
Bookman Medium
Calisto MT
Caslon 224 Book
Caslon 224 Medium
Caslon 224 Black
Cheltenham
Cheltenham Ultra
Cushing Book
Cushing Medium
Elephant
Esprit Book
Esprit Black
Galliard
Garamond BookCondensed
Garamond Book
Garamond Ultra
Garamond UltraCondensed
ITC Mendoza Roman Book
ITC Mendoza Roman Medium
ITC Officina Serif Book
Slimbach
Slimbach Medium
Slimbach Black
Usherwood Book
Usherwood Medium
Usherwood Black

## Script Fonts

Forte
Harlow Solid Italic

Lucida Handwriting
Script MT Bold

## Decorative Fonts

Chiller
Jokerman

top of page

copyright © 1999 Digit Designs

# Charlotte Sans Book

This page demonstrates the appearance of the Charlotte Sans Book typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Charlotte Sans Book 8pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 10pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 12pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 14pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 16pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 18pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 24pt

The quick red fox jumped over the lazy brown dog.

## Charlotte Sans Book 36pt

The quick red fox jumped

```
<HTML>

<HEAD>

<TITLE>Charlotte Sans Book</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/CharSansBk.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Charlotte Sans Book;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Charlotte Sans Book;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Charlotte Sans Book;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("A {text-decoration:none}");
```

```
                        document.write("-->");
                        document.write("</STYLE>");
            }else if(myPlatform.indexOf("Win") != -1){
                        document.write("<STYLE TYPE:'text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Charlotte Sans Book;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Charlotte Sans Book;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Charlotte Sans Book;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Charlotte Sans Book;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
                        document.write("</STYLE>");
                }else{
                }
}

//-->

</SCRIPT>

<!-- end stylesheet -->

</HEAD>

<BODY BGCOLOR="#FFFFFF" TEXT="#006600" LINK="#990000" VLINK="#993333"><!--
TEXT="#006600" LINK="#660000" VLINK="#993333" -->

<A NAME="top"></A>

<TABLE WIDTH="540" ALIGN="center" CELLPADDING="3" CELLSPACING="0" BORDER="0">

<TR>

        <TD CLASS="head" COLSPAN="2">

        Charlotte Sans Book

        </TD>
```

```
</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<TR>

        <TD CLASS="text" COLSPAN="2">

        This page demonstrates the appearance of the Charlotte Sans Book typeface
rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. <A
HREF="#textSamples">Samples</A> of four typical text font sizes are also provided.

        <P CLASS="nav" ALIGN="right">
        <A HREF="index.htm">return to typeface directory</A><BR>
        </P>

        </TD>

</TR>

<!-- Charlotte Sans Book 8pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">

        Charlotte Sans Book 8pt

        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>

        <TD CLASS="eight" WIDTH="500">

        The quick red fox jumped over the lazy brown dog.

        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 10pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">

        Charlotte Sans Book 10pt

        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>
```

```
        <TD CLASS="ten" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 12pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 12pt
        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>
        <TD CLASS="twelve" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 14pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 14pt
        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>
        <TD CLASS="fourteen" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>
```

```
<!-- Charlotte Sans Book 16pt -->
<TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 16pt
        </TD>
</TR>
<TR VALIGN="top">
        <TD WIDTH="40"> </TD>
        <TD CLASS="sixteen" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>
</TR>
<TR><TD COLSPAN="2"> </TD></TR>
<!-- Charlotte Sans Book 18pt -->
<TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 18pt
        </TD>
</TR>
<TR VALIGN="top">
        <TD WIDTH="40"> </TD>
        <TD CLASS="eighteen" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>
</TR>
<TR><TD COLSPAN="2"> </TD></TR>
<!-- Charlotte Sans Book 24pt -->
<TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 24pt
        </TD>
```

```
</TR>

<TR VALIGN="top">
        <TD WIDTH="40"> </TD>
        <TD CLASS="twentyFour" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 36pt -->

<TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 36pt
        </TD>

</TR>

<TR VALIGN="top">
        <TD WIDTH="40"> </TD>
        <TD CLASS="thirtySix" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 48pt -->

<TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 48pt
        </TD>

</TR>

<TR VALIGN="top">
        <TD WIDTH="40"> </TD>
        <TD CLASS="fortyEight" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
```

```
        </TD>
  </TR>
  <TR><TD COLSPAN="2"> </TD></TR>
  <!-- Charlotte Sans Book 72pt -->
  <TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 72pt
        </TD>
  </TR>
  <TR VALIGN="top">
        <TD WIDTH="40"> </TD>
        <TD CLASS="seventyTwo" WIDTH="500">
        The quick red fox jumped over the lazy brown dog.
        </TD>
  </TR>
  <TR><TD COLSPAN="2"> </TD></TR>
  </TABLE>
  <A NAME="textSamples"></A>
  <TABLE WIDTH="540" ALIGN="center" CELLPADDING="3" CELLSPACING="0" BORDER="0">
  <TR>
        <TD CLASS="head" COLSPAN="2">
        Samples of running text
        </TD>
  </TR>
  <TR><TD COLSPAN="2"> </TD></TR>
  <!-- Charlotte Sans Book 8pt -->
  <TR VALIGN="top">
        <TD CLASS="head" COLSPAN="2">
        Charlotte Sans Book 8pt Running Text
        </TD>
  </TR>
```

```
<TR VALIGN="top">

        <TD WIDTH="40"> </TD>

        <TD CLASS="eight" WIDTH="500">
```

The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog.

```
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 10pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">

        Charlotte Sans Book 10pt Running Text

        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>

        <TD CLASS="ten" WIDTH="500">
```

The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog.

```
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 12pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">

        Charlotte Sans Book 12pt Running Text

        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>
```

```
        <TD CLASS="twelve" WIDTH="500">
```

The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog.

```
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- Charlotte Sans Book 14pt -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">

        Charlotte Sans Book 14pt Running Text

        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>

        <TD CLASS="fourteen" WIDTH="500">
```

The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog. The quick red fox jumped over the lazy brown dog.

```
        </TD>

</TR>

<TR><TD COLSPAN="2"> </TD></TR>

<!-- footer -->

<TR VALIGN="top">

        <TD CLASS="head" COLSPAN="2">

         

        </TD>

</TR>

<TR VALIGN="top">

        <TD WIDTH="40"> </TD>

        <TD CLASS="nav" WIDTH="500">

        <A HREF="index.htm">return to typeface directory</A><BR>
```

CharSansBk[1]
```
        <A HREF="#top">top of page</A>

        </TD>

</TR>

</TABLE>

</BODY>

</HTML>
```

# Humana Sans ITC

This page demonstrates the appearance of the Humana Sans ITC typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Humana Sans ITC 8pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 10pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 12pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 14pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 16pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 18pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 24pt
The quick red fox jumped over the lazy brown dog.

## Humana Sans ITC 36pt
The quick red fox jumped

```
<HTML>

<HEAD>

<TITLE>Humana Sans ITC</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/HumSans.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Humana Sans ITC;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Humana Sans ITC;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Humana Sans ITC;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Humana Sans ITC;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# ITC Officina Serif Book

This page demonstrates the appearance of the ITC Officina Serif Book typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## ITC Officina Serif Book 8pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 10pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 12pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 14pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 16pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 18pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 24pt

The quick red fox jumped over the lazy brown dog.

## ITC Officina Serif Book 36pt

# The quick red fox jumped

```
<HTML>

<HEAD>

<TITLE>ITC Officina Serif Book</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/OfficinaSerBk.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:ITC Officina Serif Book;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:ITC Officina Serif Book;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:ITC Officina Serif Book;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:ITC Officina Serif Book;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Tempus Sans ITC

This page demonstrates the appearance of the Tempus Sans ITC typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Tempus Sans ITC 8pt

The quick red fox jumped over the lazy brown dog.

## Tempus Sans ITC 10pt

The quick red fox jumped over the lazy brown dog.

## Tempus Sans ITC 12pt

The quick red fox jumped over the lazy brown dog.

## Tempus Sans ITC 14pt

The quick red fox jumped over the lazy brown dog.

## Tempus Sans ITC 16pt

The quick red fox jumped over the lazy brown dog.

## Tempus Sans ITC 18pt

The quick red fox jumped over the lazy brown dog.

## Tempus Sans ITC 24pt

The quick red fox jumped over the lazy brown dog.

```
<HTML>

<HEAD>

<TITLE>Tempus Sans ITC</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/TempusSans.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Tempus Sans ITC;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Tempus Sans ITC;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Tempus Sans ITC;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Tempus Sans ITC;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Caslon 224 Book

This page demonstrates the appearance of the Caslon 224 Book typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Caslon 224 Book 8pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 10pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 12pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 14pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 16pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 18pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 24pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Book 36pt

```html
<HTML>

<HEAD>

<TITLE>Caslon 224 Book</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Caslon224Bk.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Caslon 224 Book;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Caslon 224 Book;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Caslon 224 Book;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Caslon 224 Book;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Caslon 224 Medium

This page demonstrates the appearance of the Caslon 224 Medium typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Caslon 224 Medium 8pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 10pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 12pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 14pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 16pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 18pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 24pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Medium 36pt

```
<HTML>

<HEAD>

<TITLE>Caslon 224 Medium</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Caslon224Md.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Caslon 224 Medium;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Caslon 224 Medium;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Caslon 224 Medium;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Caslon 224 Medium;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Caslon 224 Black

This page demonstrates the appearance of the Caslon 224 Black typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Caslon 224 Black 8pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 10pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 12pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 14pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 16pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 18pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 24pt

The quick red fox jumped over the lazy brown dog.

## Caslon 224 Black 36pt

```
<HTML>

<HEAD>

<TITLE>Caslon 224 Black</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Cas224B.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Caslon 224 Black;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Caslon 224 Black;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Caslon 224 Black;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Caslon 224 Black;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# ITC Mendoza Roman Book

This page demonstrates the appearance of the ITC Mendoza Roman Book typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## ITC Mendoza Roman Book 8pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 10pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 12pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 14pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 16pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 18pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 24pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Book 36pt

```
<HTML>

<HEAD>

<TITLE>ITC Mendoza Roman Book</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/MenRomBk.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:ITC Mendoza Roman Book;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# ITC Mendoza Roman Medium

This page demonstrates the appearance of the ITC Mendoza Roman Medium typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## ITC Mendoza Roman Medium 8pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 10pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 12pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 14pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 16pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 18pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 24pt

The quick red fox jumped over the lazy brown dog.

## ITC Mendoza Roman Medium 36pt

```
<HTML>

<HEAD>

<TITLE>ITC Mendoza Roman Medium</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/MenRomMed.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexof("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.twentyFour {font-size:24pt;
 color:#000000; font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.fortyEight {font-size:48pt;
 color:#000000; font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.seventyTwo {font-size:72pt;
 color:#000000; font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
 font-family:ITC Mendoza Roman Medium;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Galliard

This page demonstrates the appearance of the Galliard typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Galliard 8pt

The quick red fox jumped over the lazy brown dog.

## Galliard 10pt

The quick red fox jumped over the lazy brown dog.

## Galliard 12pt

The quick red fox jumped over the lazy brown dog.

## Galliard 14pt

The quick red fox jumped over the lazy brown dog.

## Galliard 16pt

The quick red fox jumped over the lazy brown dog.

## Galliard 18pt

The quick red fox jumped over the lazy brown dog.

## Galliard 24pt

The quick red fox jumped over the lazy brown dog.

## Galliard 36pt

```
<HTML>

<HEAD>

<TITLE>Galliard</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Galliard.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Galliard;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Galliard;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Galliard;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Galliard;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Galliard;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Galliard;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Slimbach

This page demonstrates the appearance of the Slimbach typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Slimbach 8pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 10pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 12pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 14pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 16pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 18pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 24pt

The quick red fox jumped over the lazy brown dog.

## Slimbach 36pt

```
<HTML>

<HEAD>

<TITLE>Slimbach</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Slimbach.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Slimbach;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Slimbach;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Slimbach;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Slimbach;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Slimbach;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Slimbach;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Slimbach Medium

This page demonstrates the appearance of the Slimbach Medium typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Slimbach Medium 8pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 10pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 12pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 14pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 16pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 18pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 24pt

The quick red fox jumped over the lazy brown dog.

## Slimbach Medium 36pt

```
<HTML>

<HEAD>

<TITLE>Slimbach Medium</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/SlimbachMed.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Slimbach Medium;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Slimbach Medium;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Slimbach Medium;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Slimbach Medium;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Usherwood Book

This page demonstrates the appearance of the Usherwood Book typeface
rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72.
Samples of four typical text font sizes are also provided.

return to typeface directory

## Usherwood Book 8pt
The quick red fox jumped over the lazy brown dog.

## Usherwood Book 10pt
The quick red fox jumped over the lazy brown dog.

## Usherwood Book 12pt
The quick red fox jumped over the lazy brown dog.

## Usherwood Book 14pt
The quick red fox jumped over the lazy brown dog.

## Usherwood Book 16pt
The quick red fox jumped over the lazy brown dog.

## Usherwood Book 18pt
The quick red fox jumped over the lazy brown
dog.

## Usherwood Book 24pt
The quick red fox jumped over the
lazy brown dog.

## Usherwood Book 36pt

```
<HTML>

<HEAD>

<TITLE>Usherwood Book</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/UsherBk.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Usherwood Book;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Usherwood Book;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Usherwood Book;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Usherwood Book;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Harlow Solid Italic

This page demonstrates the appearance of the Harlow Solid Italic typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Harlow Solid Italic 8pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 10pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 12pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 14pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 16pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 18pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 24pt

The quick red fox jumped over the lazy brown dog.

## Harlow Solid Italic 36pt

```
<HTML>

<HEAD>

<TITLE>Harlow Solid Italic</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/HarlowSI.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Harlow Solid Italic;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Harlow Solid Italic;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Harlow Solid Italic;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Harlow Solid Italic;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Script MT Bold

This page demonstrates the appearance of the Script MT Bold typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Script MT Bold 8pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 10pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 12pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 14pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 16pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 18pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 24pt
The quick red fox jumped over the lazy brown dog.

## Script MT Bold 36pt

```
<HTML>

<HEAD>

<TITLE>Script MT Bold</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/ScriptMB.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--
if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Script MT Bold;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Script MT Bold;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Script MT Bold;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Script MT Bold;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Chiller

This page demonstrates the appearance of the Chiller typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Chiller 8pt

The quick red fox jumped over the lazy brown dog.

## Chiller 10pt

The quick red fox jumped over the lazy brown dog.

## Chiller 12pt

The quick red fox jumped over the lazy brown dog.

## Chiller 14pt

The quick red fox jumped over the lazy brown dog.

## Chiller 16pt

The quick red fox jumped over the lazy brown dog.

## Chiller 18pt

The quick red fox jumped over the lazy brown dog.

## Chiller 24pt

The quick red fox jumped over the lazy brown dog.

## Chiller 36pt

The quick red fox jumped over the lazy brown dog.

```
<HTML>

<HEAD>

<TITLE>Chiller</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Chiller.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Chiller;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Chiller;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Chiller;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Chiller;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Chiller;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Chiller;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

# Jokerman

This page demonstrates the appearance of the Jokerman typeface rendered as a TrueDoc dynamic font in a variety of point sizes from 8 to 72. Samples of four typical text font sizes are also provided.

return to typeface directory

## Jokerman 8pt

The quick red fox jumped over the lazy brown dog.

## Jokerman 10pt

The quick red fox jumped over the lazy brown dog.

## Jokerman 12pt

The quick red fox jumped over the lazy brown dog.

## Jokerman 14pt

The quick red fox jumped over the lazy brown dog.

## Jokerman 16pt

The quick red fox jumped over the lazy brown dog.

## Jokerman 18pt

The quick red fox jumped over the lazy brown dog.

## Jokerman 24pt

```
<HTML>

<HEAD>

<TITLE>Jokerman</TITLE>

<!-- start dynamic font description -->

        <LINK REL=FONTDEF SRC="http://www.digitdesigns.com/pfr/Jokerman.pfr">

<!-- end dynamic font description -->

<!-- start Bitstream ActiveX Control support -->

        <SCRIPT LANGUAGE="JavaScript"
SRC="http://www.truedoc.com/activex/tdserver.js"></SCRIPT>

<!-- end Bitstream ActiveX Control support -->

<!-- start stylesheet -->

<SCRIPT LANGUAGE="JavaScript">

<!--

if(parseInt(navigator.appVersion)>=4){

        var myPlatform;
        myPlatform=navigator.platform;

                if(myPlatform.indexOf("Mac") != -1){
                        document.write("<STYLE TYPE='text/css'>");
                        document.write("<!--");
                        document.write("TD.eight {font-size:8pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.ten {font-size:10pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.twelve {font-size:12pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.fourteen {font-size:14pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.sixteen {font-size:16pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.eighteen {font-size:18pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.twentyFour {font-size:24pt;
color:#000000; font-family:Jokerman;}");
                        document.write("TD.thirtySix {font-size:36pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.fortyEight {font-size:48pt;
color:#000000; font-family:Jokerman;}");
                        document.write("TD.seventyTwo {font-size:72pt;
color:#000000; font-family:Jokerman;}");
                        document.write("TD.head {font-size:18pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.nav {font-size:12pt; color:#000000;
font-family:Jokerman;}");
                        document.write("TD.text {font-size:12pt; color:#000000;
font-family:Jokerman;}");
                        document.write("P.nav {font-size:12pt; color:#000000;
font-family:Jokerman;}");
                        document.write("A {text-decoration:none}");
                        document.write("-->");
```

## John Collins

**From:**     "John Collins" <jcollins@bitstream.com>
**To:**       "Cyril Concolato" <Cyril.Concolato@enst.fr>
**Cc:**       <olivier.avaro@francetelecom.com>; "Anna Chagnon" <achagnon@bitstream.com>;
              <jlyles@bitstream.com>; <skaasila@bitstream.com>; "Bob Thomas" <bthomas@bitstream.com>;
              "Vladimir Levantovsky (E-mail)" <Vladimir.Levantovsky@AgfaMonotype.com>; "Jean-Claude
              Dufourd (E-mail)" <Jean-Claude.Dufourd@enst.fr>
**Sent:**     Thursday, December 12, 2002 16:47
**Subject:**  Re: Bitstream's Proposal to ISO/IEC JTC1/SC29/WG11

Dear Mr. Concolato,

Thank you for responding to our comments yesterday. Together with the fact that PFR format is consistent with ISO rules, we firmly believe that those comments regarding the PFR format accurately reflect its capabilities in each of the 12 categories. This is based on a proper understanding of the specification provided in the proposal and the generality of the approach.

However, we are puzzled by the rules you have followed for updating the Evaluation Criteria Table. Perhaps you will permit us to explain why we are mystified.

The PFR spec describes a high-quality, generalized, portable and compact method of communicating font information from a sender to a receiver. The standard PFR format allows an open-ended range of character shapes to be communicated. It does not specifically mention such advanced typographic features as small caps, glyph variations, oldstyle figures, swashes etc. Nor does it mention such advanced capabilities as multilingual text layout, contextual alternatives, and glyph substitutions. These features are not mentioned simply because the generality of the PFR format does not limit it to only these features.

For example, the OpenType font specification does not specifically say that it is capable of handling the font "Times New Roman". Yet, it is perfectly reasonable to assume that the OpenType format is capable of handling this particular font.

We cannot accept, therefore, that the specification of a portable font technology should be required to list all the typographic features that can be used with it when it does not limit their use.

To pick a simple analogy, consider a high-quality copying machine. It is reasonable to expect that such a machine would be able to copy documents that include high-quality typography. However, nobody would expect the specification of such a machine to include a list of such advanced typographic features!

We therefore respectfully request the committee to accept that a generalized portable font technology should not be penalized just because it does not enumerate the possible range of typography and capabilities that it can support.

We propose that all entries in the column under "Bitstream Proposal" of the Evaluation Criteria Table should be updated with the information I sent you in my earlier e-mail dated Wed 12/11/02, 5:01 PM.

Best regards,

**BITSTREAM 0655**

-- John Collins


----- Original Message -----
From: "Cyril Concolato" <Cyril.Concolato@enst.fr>
To: "John Collins" <jcollins@bitstream.com>
Cc: <olivier.avaro@francetelecom.com>; "Anna Chagnon"
<achagnon@bitstream.com>; <jlyles@bitstream.com>; <skaasila@bitstream.com>;
"Bob Thomas" <bthomas@bitstream.com>; "Vladimir Levantovsky (E-mail)"
<Vladimir.Levantovsky@AgfaMonotype.com>; "Jean-Claude Dufourd (E-mail)"
<Jean-Claude.Dufourd@enst.fr>
Sent: Wednesday, December 11, 2002 22:39
Subject: Re: Bitstream's Proposal to ISO/IEC JTC1/SC29/WG11


> Dear Mr. Collins,
>
> We would like to thank you for the prompt response you gave us. Please
> find the attached draft version of the results of the Call for Proposals.
> The rules that we followed to update the document are to include text that
> could be found in the specification provided in the proposal. When no
> reference to the specification was provided, we left the text unchanged as
> agreed with Bob Thomas.
> However, if you believe that the specification you attached to the
> proposal contains technical details that would help us understand how PFR
> can fulfill the requirements, please feel free to provide us with this
> information. Note that this information should be delivered before
> tomorrow 9 a.m. (Japanese time).
>
> Best Regards,
>
> On behalf of the MPEG-4 Systems group,
>
> Cyril Concolato
>
>
> On Wed, 11 Dec 2002, John Collins wrote:
>
> > Dear Mr. Concolato and Mr Avaro,
> >
> > First we would like to thank you for giving Bitstream the opportunity to
> > answer the outstanding questions relating to the Evaluation Criteria
Table.
> > I trust that this will reach you in time for your Thursday morning
meeting.
> >
> > Judging from the current contents of this table, it seems to us that
there
> > has been some misunderstanding of the relationship between OpenType (OT)
and
> > the Portable Font Resource (PFR) format. Bitstream considers OT to be a
> > highly significant development in font technology and fully supports it.
As
> > you are aware, the PFR format has become the standard means by which
font
> > information is efficiently transported from authoring systems to the
> > playback devices where characters are rendered. We believe that these
two
> > complementary technologies enjoy a high level of mutual synergy.
> >

**BITSTREAM 0656**

> > In answer to your three specific questions, I'm pleased to be able to
> > confirm that:
> >
> > a. The current PFR spec does support native hints
> >
> > b. The current PFR spec does support advanced typographic features
> >
> > c. The current PFR spec does support surrogate planed.
> >
> > In reviewing the Evaluation Criteria Table, we have noticed several
errors
> > and omissions that we would like to suggest corrections for. We have
> > therefore provided new information for each of the twelve rows of the
table
> > you sent us. These entries also serve to explain the answers to the
three
> > questions you specifically asked.
> >
> > We have also provided a summary of the architecture that enables the
> > standard PFR format to support advanced typographic capabilities
consistent
> > with a compact and predictable playback engine.
> >
> > I would also like to mention that, having been accepted as an ISO
standard,
> > the PFR format is consistent with ISO rules.
> >
> > I recognize that there is a great deal of material in this email and
some of
> > it may be new to the committee. I apologize in advance if anything is
not as
> > clear as it should be. If you, or any other members of the committee
have
> > any additional questions or require further information, please contact
the
> > undersigned.
> >
> > Best regards,
> >
> > John Collins
> > VP CTO, Bitstream Inc.
> >
> >
> > COMMENTS ON THE EVALUATION CRITERIA TABLE
> >
> > The following are offered as replacements to the current entries in this
> > table under the heading of "Bitstream Proposal".
> >
> > 1. Allows to transmit fonts in compressed format
> > -------------------------------------------------
> > The PFR format allows both lossless and lossy compression. Lossless
> > compression maintains 100% fidelity of the font shapes. The combination
of
> > lossless and lossy compression achieves a greater level of compression.
> >
> > The use of the PFR format as a transport medium for font information
allows
> > advanced typographic features to be used in the authoring system to
refine
> > the identity, positioning and size of the individual glyphs that make up

a
> > page or image area.
> >
> >
> > 2. Compatible with existing or developing standards
> > --------------------------------------------------
> > The PFR format has been the universal choice for standards related to
the
> > use of fonts with digital TV. The applicable standard is ISO/IEC 16500.
This
> > standard is supported by the following TV organizations: DVB, ATSC/DASE,
> > DTG, and OCAP.
> >
> >
> > 3. Allows to use commercially available fonts
> > ---------------------------------------------
> > Because the PFR format is normally used as a transport medium for font
> > information, it is capable of handling future developments in font
formats
> > as well as present and legacy font formats. This allows future font
> > technologies to be be backward compatible with existing font transport
and
> > playback technology.
> >
> >
> > 4. Supported by existing implementations
> > ----------------------------------------
> > The use of the PFR format to convey font information to the playback
device
> > makes it independent of authoring applications. Thus any authoring
> > application can be use OpenType fonts to create advanced typographic
content
> > which can then be transported using the PFR format in conjunction with
the
> > page contents.
> >
> > The PFR format is completely platform- and OS-independent and is not
> > sensitive to byte-order issues between CPU architectures.
> >
> > The PFR format has been deployed across a variety of platforms (e.g. PC,
> > Mac, Unix, SetTop boxes, mobile), Operating systems (e.g. Windows, Mac,
> > RTOS, QNX), and software modules (e.g. FreeType, Novel JVM). Although
PFRs
> > can be used in conjunction with any applications, some applications such
as
> > WebEx, CorelDraw and WordPerfect have the technology built-in directly
into
> > the application itself.
> >
> >
> > 5. Allows representation of a variety of fonts
> > ----------------------------------------------
> > The PFR format can represent character images defined in any font format
> > including PS Type 1, TrueType and OpenType. This decoupling of the PFR
from
> > the actual font used allows future font format enhancements to be used.
> >
> >
> > 6. Support for advanced typographic features
> > --------------------------------------------

> > Kerning, Small Caps, Glyph Variations, OldStyle figures, Swashes,
Contextual
> > glyph substitution, Ligatures (standard, discretionary and historical),
> > Scientific Inferiors and Historical forms are all fully supported. In
> > addition, applications that take advantage of future enhancements of
> > OpenType will also be able to continue to use the PFR format.
> >
> > The authoring application can use a combination of information included
in
> > the OpenType font and manual overrides to pick the specific glyphs used
to
> > represent a piece of text. The resulting datastream defines the
identity,
> > size and position of each character required in the final image along
with
> > the PFR required to support the glyphs used.
> >
> >
> > 7. Allow lossless compression of font data
> > -------------------------------------------
> > The PFR format allows both lossless and lossy compression. The lossy
> > component is optional but is generally used to provide significantly
> > improved compression relative to what can be achieve with lossless
> > compression only.
> >
> >
> > 8. Support capabilities for high quality scaling
> > ------------------------------------------------
> > Fully supported. In addition to the native hints embedded in a PFR, an
> > author may include bitmap images of specific characters at specific
sizes in
> > order to achieve 100% pixel-for-pixel fidelity on the ultimate output
> > medium. The Type 1-based hints in the PFR facilitate optimization of the
> > rendered image for the particular output medium.
> >
> >
> > 9. Provide support for all languages
> > ------------------------------------
> > Fully supported, including languages that require advanced typographic
> > features. The identity, size and position of each character on a page is
> > specified in the datastream based on the page layout generated by the
> > authoring application.
> >
> >
> > 10 Full support for international character set
> > ----------------------------------------------
> > Fully supported. The PFR format is capable of addressing the complete
> > Unicode character set. Other National encoding may be used if required.
> > Additional surrogate planes are handles by multiple PFRs.
> >
> >
> > 11. Support advanced capabilities for multilingual text layout
> > --------------------------------------------------------------
> > Fully supported. The identity, size and position of each character on a
page
> > is specified in the datastream based on the page layout generated by the
> > authoring application.
> >
> >
> > 12. Support advanced capabilities for contextual alternatives

> > ------------------------------------------------------------
> > Fully supported. The authoring application uses a combination of information
> > included in the font and manual overrides to pick the specific glyphs used
> > to represent a piece of text. The resulting datastream defines the identity,
> > size and position of each character required in the final image along with
> > the PFR required to support it.
> >
> >
> > SUMMARY
> >
> > The PFR format can represent any arbitrary collection of character shapes in
> > a fully scalable and compact format. Advanced typographic features are
> > handled within the authoring applications. This provides a full complement
> > of advanced typographic facilities while at the same time keeps the playback
> > software lightweight and operationally predictable. It also allows
> > additional typographic features to be added without any impact on either the
> > PFR format or the playback software rendering it.
> >
> > The PFR format uses a native hinting system based on Adobe's Type 1 and CFF
> > hinting. This provides very high quality results that can be matched to the
> > requirements and limitations of the particular output medium.
> >
> > Used in conjunction with OpenType fonts that may have extensive typographic
> > refinements, authoring applications determine the size and position of each
> > character on the page. This information, along with a PFR containing the
> > required font information is then embedded in the information stream for
> > reproduction at the playback end.
> >
> > This approach allows authors to manually override where necessary the
> > typographic layout of the resulting textual material.
> >
> > It also allows future typographic refinements to be incorporated without the
> > cost of updating the font transport format (PFR) or the software rendering
> > it in playback devices.
> >
> > [end]
> >
> >

Perhaps you will permit us to explain why we are mystified.

Thank you for responding to our comments yesterday. ~~We are, however,~~ However, we are puzzled by the rules you have followed ~~in connection with the update of~~ for updating the Evaluation Criteria Table.

The PFR spec describes a high-quality, generalized, ~~and portable,~~ and compact method of communicating font information from a sender to a receiver. The standard PFR format allows an open-ended range of character shapes to be communicated. It does not specifically mention such advanced typographic features as small caps, glyph variations, old-style figures, swashes, etc. — nor does it mention such advanced capabilities as multilingual text layout, contextual alternatives, and glyph substitutions — simply because ~~its generally does not limit it to~~ the PFR is not limited to such features.

~~For example, just because the OpenType font specification does not specifically say~~ that it is capable of ~~handling the "Times New Roman" font, it certainly doesn't imply that it is not capable of handling this particular font.~~ For example, the OpenType font specification does not specifically say that it is capable of handling the font "Times New Roman". Yet, it is logical to assume that the OpenType format is capable of handling this particular font.

We cannot accept, therefore, that it is ~~logical to expect~~ that the specification of a portable font technology should list all the advanced typographic features and capabilities that can be used with it.

To use a simple analogy, consider a high-quality copying machine. It is reasonable to expect that such a machine would be capable ~~of copying~~ legible to copy documents that ~~involve~~ include high-quality typography. However, ~~one~~ you would not expect the specification ~~of~~ for such a machine to include a list of each advanced typographic features.

We therefore ask the committee to accept that a generalized portable font technology should not be ~~eliminated from consideration~~ penalized just because it does not ~~enumerate~~ enumerate the possible range of typography and capabilities that it can support.

We propose that all entries in the column under "Bitstream Proposal" of the Evaluation Criteria Table should be updated with the information I sent you in my earlier e-mail dated Wed 12/11/02, 5:01 PM.

Best regards,

— John Collins

P.S. Also note that one criterion, "Support capabilities for high quality scaling of text at any resolution and point sizes with the highest levels of legibility and readability" needs to be updated. Right now, the Bitstream column reads only "PFR supports scaling." The omission of "high-quality," and "levels of legibility and readability" were based on an incorrect sample provided by AgfA Monotype on the http://www.geocities.com/fontsec/PrimasSansBT-TD-PFR.html Web page and on an incorrect sample provided on page 1.5 of AgfA Monotype's "Response to the Call for Proposals for font format representation, numbered M9130. Together with the PFR's support for native hints, we believe this column entry should be updated to state:

"PFR provides native hinting and supports high-quality scaling text with the highest levels of legibility and readability."

# John Collins

**From:**   "John Collins" <jcollins@bitstream.com>
**To:**     "Bob Thomas" <bthomas@bitstream.com>; "Jim Lyles" <jlyles@bitstream.com>; "Sampo Kaasila" <skaasila@bitstream.com>
**Sent:**   Thursday, December 12, 2002 15:07
**Subject:** Draft response to MPEG4 committee

This is what we are replying to:


Dear Mr. Collins,

We would like to thank you for the prompt response you gave us. Please find the attached draft version of the results of the Call for Proposals. The rules that we followed to update the document are to include text that could be found in the specification provided in the proposal. When no reference to the specification was provided, we left the text unchanged as agreed with Bob Thomas.
However, if you believe that the specification you attached to the proposal contains technical details that would help us understand how PFR can fulfill the requirements, please feel free to provide us with this information. Note that this information should be delivered before tomorrow 9 a.m. (Japanese time).

Best Regards,

On behalf of the MPEG-4 Systems group,

Cyril Concolato


Here is a draft of our response:


Dear Mr. Concolato,

Thank you for responding to our comments yesterday. We are, however, puzzled by the rules you have followed in connection with the update of the Evaluation Criteria Table. Perhaps you will permit us to explain why we are mystified.

The PFR spec describes a high quality, generalized, and portable method of communicating font information from a sender to a receiver. The standard PFR format allows an open-ended range of character shapes to be communicated. It does not specifically mention such advanced typographic features as small caps, glyph variations, oldstyle figures etc. simply because its generality does not limit it to such features.

For example, just because the OpenType font specification does not specifically say that it is capable of handling the "Times New Roman" font, it certainly doesn't imply that it is not capable of handling this particular font.

We cannot accept, therefore, that it logical to expect that the specification of a portable font technology should list all the typographic features that can be used with it.

To use a simple analogy, consider a high-quality copying machine. It is

reasonable to expect that such a machine would be capable of copying documents that involve high-quality typography. However, one would not expect the specification of such a machine to include a list of such advanced typographic features.

We therefore ask the committee to accept that a generalized portable font technology should not be eliminated from consideration just because it does not ennumerate the possible range of typography that it can support.

Best regards,

-- John Collins

# INTERNATIONAL ORGANISATION FOR STANDARDISATION
## ORGANISATION INTERNATIONALE DE NORMALISATION
## ISO/IEC JTC1/SC29/WG11
## CODING OF MOVING PICTURES AND AUDIO

ISO/IEC JTC1/SC29/WG11
MPEG2002/███
December 2002

| | |
|---|---|
| Source: | Systems |
| Status: | Working Draft |
| Title: | Results of the call for Proposal on Font format representation and font compression technology |
| Editor: | Cyril Concolato (ENST) |

## Introduction

This document contains the table used to evaluate the answers to the Call for Proposal on Font Format representation and font compression technology. The table has been built using the requirements and evaluation criteria sections of the Call for Proposals document (N5289) and using the information provided in the responses to the Call for Proposals and specifications attached to those responses.

## Evaluation Criteria Table

| Evaluation Criteria | Bitstream Proposal | AGFA Monotype Proposal (OpenType [+ MicroType Express]) |
|---|---|---|
| Allows to transmit fonts in compressed format without compromising the quality and features of original fonts | No specific compression mechanism can be found in the PFR specification but instead mechanisms for a compact representation are specified. PFR allows for lossless representation of character shapes. No specific support can be found for advanced typographic features and native hints. | Compression is achieved by lossless compression technologies like Huffman coding. All the features of OpenType are supported by the MicroType Express compression technology |
| Compatible with existing or developing standards. | PFR is standardized as ISO/IEC 16500 and supported by DVB, ATSC, DTG, OCAP. | OpenType and MicroType Express are widely deployed and industry standards. OpenType is supported also by ATypI. |
| Allows to use commercially available fonts | Supported | Supported |
| Supported by existing implementations of font rendering systems on multiple different platforms across a broad range of operating systems, applications and output devices | Platforms: PC, Mobiles, STB OS: RTOS, QNX Applications: FreeType, Novel JVM, WebEx, CorelDraw, Corel WordPerfect | Platforms: PC, Mobiles, STB, PDAs OS: Windows, CE, PPC, Unix, Linux, Mac, Palm, Symbian, VxWorks Applications: All Adobe applications, MS applications and FreeType (OpenType). |
| Allows representation of variety of fonts. | PS Type1, TrueType, OpenType | PS Type1, TrueType, OpenType MicroType Express compression technology can be applied to OpenType/TrueType Fonts. |

BITSTREAM 0664

| Support advanced typographic features • Kerning • Small caps • Glyph variations • Old style figures • Swashes • Contextual glyph substitutions • Ligatures: standard, discretionary, historical • Scientific Inferiors • Historical forms | PFR supports Kerning. | All these features are supported by OpenType. MicroType Express technology can losslessly compress fonts with all these features. |
|---|---|---|
| Allow lossless compression of font data. | PFR format does not support any lossless compression. | MicroType Express allows lossless compression by applying canonical Huffman encoding. |
| Support capabilities for high quality scaling of text at any resolution and point sizes with the highest levels of legibility and readability. | PFR supports scaling. | OpenType provides advanced hinting capabilities and has highest possible quality of text any resolution. MicroType Express preserves all native hints. |
| Provide support for all languages | PFR supports Latin, CJK, WGL4 and many others. It does not support languages that require support for advanced typographic features. | OpenType supports all the languages including those that require support for advanced typographic features. MicroType Express preserves all the advanced features of OpenType fonts. |
| Full support for international character set encoding using Unicode standard and surrogate planes. | The PFR format is capable of addressing the complete Unicode character set. Additional surrogate planes are handled by multiple PFRs. | Fully supported by OpenType and preserved by MicroType Express. |
| Support advanced capabilities for multilingual text layout | Not supported. | Fully supported by OpenType and preserved by MicroType Express. |
| Support advanced capabilities for contextual alternatives and glyph substitution. | Not supported. | Fully supported by OpenType and preserved by MicroType Express. |

## Recommandations

## Open Issues:
We have to be careful that the technologies we are standardizing do not make implicit or explicit references to technologies that do not conform to ISO rules.

- Times New Raman.
- Copy Mcdrive.

# INTERNATIONAL ORGANISATION FOR STANDARDISATION
# ORGANISATION INTERNATIONALE DE NORMALISATION
# ISO/IEC JTC1/SC29/WG11
# CODING OF MOVING PICTURES AND AUDIO

ISO/IEC JTC1/SC29/WG11
MPEG2002/
December 2002

**Source:** Systems
**Status:** Working Draft
**Title:** Results of the call for Proposal on Font format representation and font compression technology
**Editor:** Cyril Concolato (ENST)

## Introduction

This document contains the table used to evaluate the answers to the Call for Proposal on Font Format representation and font compression technology. The table has been built using the requirements and evaluation criteria sections of the Call for Proposals document (N5289) and using the information provided in the responses to the Call for Proposals and specifications attached to those responses.

## Evaluation Criteria Table

| Evaluation Criteria | Bitstream Proposal | AGFA Monotype Proposal (OpenType [+ MicroType Express]) |
|---|---|---|
| Allows to transmit fonts in compressed format without compromising the quality and features of original fonts | No specific compression mechanism can be found in the PFR specification but instead mechanisms for a compact representation are specified. PFR allows for lossless representation of character shapes. No specific support can be found for advanced typographic features and native hints. | Compression is achieved by lossless compression technologies like Huffman coding. All the features of OpenType are supported by the MicroType Express compression technology |
| Compatible with existing or developing standards. | PFR is standardized as ISO/IEC 16500 and supported by DVB, ATSC, DTG, OCAP. | OpenType and MicroType Express are widely deployed and industry standards. OpenType is supported also by ATypI. |
| Allows to use commercially available fonts | Supported | Supported |
| Supported by existing implementations of font rendering systems on multiple different platforms across a broad range of operating systems, applications and output devices | Platforms: PC, Mobiles, STB OS: RTOS, QNX Applications: FreeType, Novel JVM, WebEx, CorelDraw, Corel WordPerfect | Platforms: PC, Mobiles, STB, PDAs OS: Windows, CE, PPC, Unix, Linux, Mac, Palm, Symbian, VxWorks Applications: All Adobe applications, MS applications and FreeType (OpenType). |
| Allows representation of variety of fonts. | PS Type1, TrueType, OpenType | PS Type1, TrueType, OpenType MicroType Express compression technology can be applied to OpenType/TrueType Fonts. |

**BITSTREAM 0666**

| | | |
|---|---|---|
| Support advanced typographic features<br>• Kerning<br>• Small caps<br>• Glyph variations<br>• Old style figures<br>• Swashes<br>• Contextual glyph substitutions<br>• Ligatures: standard, discretionary, historical<br>• Scientific Inferiors<br>• Historical forms | PFR supports Kerning. | All these features are supported by OpenType. MicroType Express technology can losslessly compress fonts with all these features. |
| Allow lossless compression of font data. | PFR format does not support any lossless compression. | MicroType Express allows lossless compression by applying canonical Huffman encoding. |
| Support capabilities for high quality scaling of text at any resolution and point sizes with the highest levels of legibility and readability. | PFR supports scaling. | OpenType provides advanced hinting capabilities and has highest possible quality of text any resolution.<br>MicroType Express preserves all native hints. |
| Provide support for all languages | PFR supports Latin, CJK, WGL4 and many others. It does not support languages that require support for advanced typographic features. | OpenType supports all the languages including those that require support for advanced typographic features. MicroType Express preserves all the advanced features of OpenType fonts. |
| Full support for international character set encoding using Unicode standard and surrogate planes. | The PFR format is capable of addressing the complete Unicode character set. Additional surrogate planes are handled by multiple PFRs. | Fully supported by OpenType and preserved by MicroType Express. |
| Support advanced capabilities for multilingual text layout | Not supported. | Fully supported by OpenType and preserved by MicroType Express. |
| Support advanced capabilities for contextual alternatives and glyph substitution. | Not supported. | Fully supported by OpenType and preserved by MicroType Express. |

## Recommandations

## Open Issues:
We have to be careful that the technologies we are standardizing do not make implicit or explicit references to technologies that do not conform to ISO rules.

## John Collins

| | |
|---|---|
| **From:** | "John Collins" <jcollins@bitstream.com> |
| **To:** | <avaro@rd.francetelecom.com>; "Cyril Concolato" <concolat@enst.fr> |
| **Cc:** | "'Anna Chagnon'" <achagnon@bitstream.com>; <jlyles@bitstream.com>; <skaasila@bitstream.com>; "Bob Thomas" <bthomas@bitstream.com>; "'Vladimir Levantovsky (E-mail)'" <Vladimir.Levantovsky@AgfaMonotype.com>; "'Jean-Claude Dufourd (E-mail)'" <Jean-Claude.Dufourd@enst.fr> |
| **Sent:** | Wednesday, December 11, 2002 16:09 |
| **Subject:** | Bitstream's Proposal to ISO/IEC JTC1/SC29/WG11 |

Dear Mr. Concolato and Mr Avaro,

First we would like to thank you for giving Bitstream the opportunity to answer the outstanding questions relating to the Evaluation Criteria Table. I trust that this will reach you in time for your Thursday morning meeting.

Judging from the current contents of this table, it seems to us that there has been some misunderstanding of the relationship between OpenType (OT) and the Portable Font Resource (PFR) format. Bitstream considers OT to be a highly significant development in font technology and fully supports it. As you are aware, the PFR format has become the standard means by which font information is efficiently transported from authoring systems to the playback devices where characters are rendered. We believe that these two complementary technologies enjoy a high level of mutual synergy.

In answer to your three specific questions, I'm pleased to be able to confirm that:

a. The current PFR spec does support native hints

b. The current PFR spec does support advanced typographic features

c. The current PFR spec does support surrogate planed.

In reviewing the Evaluation Criteria Table, we have noticed several errors and omissions that we would like to suggest corrections for. We have therefore provided new information for each of the twelve rows of the table you sent us. These entries also serve to explain the answers to the three questions you specifically asked.

We have also provided a summary of the architecture that enables the standard PFR format to support advanced typographic capabilities consistent with a compact and predictable playback engine.

I would also like to mention that, having been accepted as an ISO standard, the PFR format is consistent with ISO rules.

I recognize that there is a great deal of material in this email and some of it may be new to the committee. I apologize in advance if anything is not as clear as it should be. If you, or any other members of the committee have any additional questions or require further information, please contact the undersigned.

Best regards,

John Collins
VP CTO, Bitstream Inc.

**BITSTREAM 0668**

12/11/2002

COMMENTS ON THE EVALUATION CRITERIA TABLE

The following are offered as replacements to the current entries in this table under the heading of "Bitstream Proposal".

1. Allows to transmit fonts in compressed format
------------------------------------------------
The PFR format allows both lossless and lossy compression. Lossless compression maintains 100% fidelity of the font shapes. The combination of lossless and lossy compression achieves a greater level of compression.

The use of the PFR format as a transport medium for font information allows advanced typographic features to be used in the authoring system to refine the identity, positioning and size of the individual glyphs that make up a page or image area.

2. Compatible with existing or developing standards
---------------------------------------------------
The PFR format has been the universal choice for standards related to the use of fonts with digital TV. The applicable standard is ISO/IEC 16500. This standard is supported by the following TV organizations: DVB, ATSC/DASE, DTG, and OCAP.

3. Allows to use commercially available fonts
---------------------------------------------
Because the PFR format is normally used as a transport medium for font information, it is capable of handling future developments in font formats as well as present and legacy font formats. This allows future font technologies to be be backward compatible with existing font transport and playback technology.

4. Supported by existing implementations
----------------------------------------
The use of the PFR format to convey font information to the playback device makes it independent of authoring applications. Thus any authoring application can be use OpenType fonts to create advanced typographic content which can then be transported using the PFR format in conjunction with the page contents.

The PFR format is completely platform- and OS-independent and is not sensitive to byte-order issues between CPU architectures.

The PFR format has been deployed across a variety of platforms (e.g. PC, Mac, Unix, SetTop boxes, mobile), Operating systems (e.g. Windows, Mac, RTOS, QNX), and software modules (e.g. FreeType, Novel JVM). Although PFRs can be used in conjunction with any applications, some applications such as WebEx, CorelDraw and WordPerfect have the technology built-in directly into the application itself.

5. Allows representation of a variety of fonts
----------------------------------------------
The PFR format can represent character images defined in any font format including PS Type 1, TrueType and OpenType. This decoupling of the PFR from the actual font used allows future font format enhancements to be used.

6. Support for advanced typographic features
---------------------------------------------
Kerning, Small Caps, Glyph Variations, OldStyle figures, Swashes, Contextual
glyph substitution, Ligatures (standard, discretionary and historical),
Scientific Inferiors and Historical forms are all fully supported. In
addition, applications that take advantage of future enhancements of
OpenType will also be able to continue to use the PFR format.

The authoring application can use a combination of information included in
the OpenType font and manual overrides to pick the specific glyphs used to
represent a piece of text. The resulting datastream defines the identity,
size and position of each character required in the final image along with
the PFR required to support the glyphs used.

7. Allow lossless compression of font data
---------------------------------------------
The PFR format allows both lossless and lossy compression. The lossy
component is optional but is generally used to provide significantly
improved compression relative to what can be achieve with lossless
compression only.

8. Support capabilities for high quality scaling
-------------------------------------------------
Fully supported. In addition to the native hints embedded in a PFR, an
author may include bitmap images of specific characters at specific sizes in
order to achieve 100% pixel-for-pixel fidelity on the ultimate output
medium. The Type 1-based hints in the PFR facilitate optimization of the
rendered image for the particular output medium.

9. Provide support for all languages
--------------------------------------
Fully supported, including languages that require advanced typographic
features. The identity, size and position of each character on a page is
specified in the datastream based on the page layout generated by the
authoring application.

10 Full support for international character set
-----------------------------------------------
Fully supported. The PFR format is capable of addressing the complete
Unicode character set. Other National encoding may be used if required.
Additional surrogate planes are handles by multiple PFRs.

11. Support advanced capabilities for multilingual text layout
----------------------------------------------------------------
Fully supported. The identity, size and position of each character on a page
is specified in the datastream based on the page layout generated by the
authoring application.

12. Support advanced capabilities for contextual alternatives
---------------------------------------------------------------
Fully supported. The authoring application uses a combination of information
included in the font and manual overrides to pick the specific glyphs used
to represent a piece of text. The resulting datastream defines the identity,

size and position of each character required in the final image along with the PFR required to support it.

SUMMARY

The PFR format can represent any arbitrary collection of character shapes in a fully scalable and compact format. Advanced typographic features are handled within the authoring applications. This provides a full complement of advanced typographic facilities while at the same time keeps the playback software lightweight and operationally predictable. It also allows additional typographic features to be added without any impact on either the PFR format or the playback software rendering it.

The PFR format uses a native hinting system based on Adobe's Type 1 and CFF hinting. This provides very high quality results that can be matched to the requirements and limitations of the particular output medium.

Used in conjunction with OpenType fonts that may have extensive typographic refinements, authoring applications determine the size and position of each character on the page. This information, along with a PFR containing the required font information is then embedded in the information stream for reproduction at the playback end.

This approach allows authors to manually override where necessary the typographic layout of the resulting textual material.

It also allows future typographic refinements to be incorporated without the cost of updating the font transport format (PFR) or the software rendering it in playback devices.

[end]

# INTERNATIONAL ORGANISATION FOR STANDARDISATION
## ORGANISATION INTERNATIONALE DE NORMALISATION
## ISO/IEC JTC1/SC29/WG11
## CODING OF MOVING PICTURES AND AUDIO

ISO/IEC JTC1/SC29/WG11
MPEG2002/
December 2002

| | |
|---|---|
| Source: | Systems |
| Status: | Working Draft |
| Title: | Results of the call for Proposal on Font format representation and font compression technology |
| Editor: | Cyril Concolato (ENST) |

## Introduction

This document contains the table used to evaluate the answers to the Call for Proposal on Font Format representation and font compression technology. The table has been built using the requirements and evaluation criteria sections of the Call for Proposal document (N5289).

## Evaluation Criteria Table

| Evaluation Criteria | Bitstream Proposal | AGFA Monotype Proposal (OpenType [+ MicroType Express]) |
|---|---|---|
| Allows to transmit fonts in compressed format without compromising the quality and features of original fonts | Compression not supported but instead use of a compact representation. The current spec does not support advanced typographic features and hints | Compression is achieved by lossless compression technologies like Huffman coding. All the features of OpenType are supported by the MicroType Express compression technology |
| Compatible with existing or developing standards. | PFR is standardized as ISO/IEC 16500 and supported by DVB, ATSC, DTG, OCAP. | OpenType and MicroType Express are widely deployed and industry standards. OpenType is supported also by ATypl. |
| Allows to use commercially available fonts | Supported | Supported |
| Supported by existing implementations of font rendering systems on multiple different platforms across a broad range of operating systems, applications and output devices | Platforms: PC, Mobiles, STB OS: RTOS, QNX Applications: FreeType, Novel JVM, WebEx, CorelDraw, Corel WordPerfect | Platforms: PC, Mobiles, STB, PDAs OS: Windows, CE, PPC, Unix, Linux, Mac, Palm, Symbian, VxWorks Applications: All Adobe applications, MS applications and many others. |
| Allows representation of variety of fonts. | PS Type1, TrueType, OpenType | PS Type1, TrueType, OpenType MicroType Express compression technology can be applied to OpenType/TrueType Fonts. |

BITSTREAM 0672

| Support advanced typographic features | To be revisited | All these features are supported by OpenType. MicroType Express technology can losslessly compress all these features. |
|---|---|---|
| • Kerning <br> • Small caps <br> • Glyph variations <br> • Old style figures <br> • Swashes <br> • Contextual glyph substitutions <br> • Ligatures: standard, discretionary, historical <br> • Scientific Inferiors <br> • Historical forms | *Yes.* <br><br> *~ (Both.)* | |
| Allow lossless compression of font data. | PFR format does not support any lossless compression. | MicroType Express allows lossless compression by applying canonical Huffman encoding. |
| Support capabilities for high quality scaling of text at any resolution and point sizes with the highest levels of legibility and readability. | PFR supports scaling. | OpenType provides advanced hinting capabilities and has highest possible quality of text any resolution. MicroType Express preserves all native hints. |
| Provide support for all languages | PFR supports Latin, CJK, WGL4 and many others. It does not support languages that require support for advanced typographic features. | OpenType supports all the languages including those that require support for advanced typographic features. MicroType Express preserves all the advanced features of OpenType fonts. |
| Full support for international character set encoding using Unicode standard and surrogate planes. | Fully supported | Fully supported by OpenType and preserved by MicroType Express. |
| Support advanced capabilities for multilingual text layout | To be revisited | Fully supported by OpenType and preserved by MicroType Express. |
| Support advanced capabilities for contextual alternatives and glyph substitution. | To be revisited | Fully supported by OpenType and preserved by MicroType Express. |

**Recommandations**

**Open Issues:**
We have to be careful that the technologies we are standardizing do not make implicit or explicit references to technologies that do not conform to ISO rules.

*uncertainty. — consistent elicit behaviour.*

*future expances.*

*liftorigh for elicit*

*Use with OpenType and legacy fonts.*

**BITSTREAM 0673**

# EXHIBIT F




October 25, 2004

New Users: [ SIGN UP ]    Members: [ LOG IN ]

▲ Lycos Home    Site Map    My Lycos    Lycos Mail


**The Web Developer's Resource**

SEARCH: ⦿ webmonkey  ○ the web    JUMP TO A TOPIC:

[_____] [ GO ]    [ Choose Topic ▾ ] [ G

home / design / fonts /



## "There's gotta be a way to get that graph into my report!"
## SnagIt SolvesIt...TIME & TIME AGAIN

**The How-to Library:**

📁 **Authoring**

🖥 **Design**
    Site Building
    Graphics
    Fonts

📁 **Multimedia**

📁 **E-Business**

📁 **Programming**

📁 **Backend**

📁 **Jobs**

📧 **About Webmonkey**

- - - - - - - - - - - - - - - - -

<advertisement>


**DOMAINS**
$9.95
**CLICK HERE!**
Lycos Domain Names
Get email forwarding, domain
management tools, and more for
just 9.95 a year!

</advertisement>
- - - - - - - - - - - - - - - - -

Sign up for **Elbow Grease**,
our newsletter.

# Design Fonts

### Web Typography Tutorial
Let Nadav be your guide to the strange an mystical world of
type. Learn the basics of how type works, then learn the secret
to using it on the Web. *7 Nov 2001*

### Embedding Fonts Tutorial
Mulder tells you what you need to know about embedded fonts,
then shows you how to embed them, step by step, with the two
competing technologies: Embedded OpenType and TrueDoc.
*4 Nov 1999*

### Font Manager Overview
Want a way to organize your fonts? Turn them on and off at
your whim? Michael will help you find the right font manager
for you. *20 Jan 2000*

### Intro to Embedded Fonts
You can now embed fonts right into your Web pages to make
your site good lookin', searchable, and structurally beautiful.
It's true — Taylor says so. *8 Jan 1998*

### Why Type on the Web Is So Bad
Typography is a craft. Picking fonts for the Web is a blind
stumble. Eric elucidates. *4 Dec 1997*

### Are You Stealing Fonts?
New browsers allow you to embed fonts into your Web pages,
but when are you legally allowed to? *8 Sep 1997*

### Look Ma! 15 Fonts!
Lots of fonts to choose from isn't always a good thing. Kristin
takes a look at some font technologies. *13 Nov 1996*

**OpenType Fonts**
The definitive source for over
1,600 OpenType fonts.
www.linotype.com

**MICR Fonts**
MICR, CNC-7, OCR, and
more DIMM, SIMM, True
Type - Custom
www.micrpro.com

**SignatureFactory**
Convert your Signature to a
font. Only $9.95. Satisfaction
guaranteed
www.signaturefactory.com

**Free Fonts CD**
Modern, cursive, ethnic, retro
font & more on 1 incredible
CD - Free!
www.manaysoftware.com

**» Lycos Worldwide**    © Copyright 2004, Lycos, Inc. All Rights Reserved. Lycos® is a registered trademark of Carnegie Mellon University.

About Lycos | Help | Feedback | Jobs | Advertise

Your use of this website constitutes acceptance of the Lycos Network Privacy Policy and Terms & Conditions.

# EXHIBIT G

▷
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois.
FORSTER MUSIC PUBLISHER, INC., Plaintiff,
v.
PRICE STERN SLOAN, INC. and Buena Vista
Pictures Distribution, Inc.,
Defendants.
**93 C 4487.**

April 21, 1995.

*MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

*1 Plaintiff, Forster Music Publisher Inc. ("Forster"), brings this action for copyright infringement pursuant to 17 U.S.C. § 101 et. seq. The matter is before the court on defendants' 12(c) motion for judgment on the pleadings. For the reasons stated below, the motion is granted.

*Background*
Forster owns the copyright to "It Ain't Gonna Rain No Mo'," a song written by the late Wendell Woods Hall. In its complaint, Forster alleges that defendants Price Stern Sloan, Inc. ("Price") and Buena Vista Pictures Distribution, Inc. ("Buena Vista") copied and publicly distributed different versions of the song without permission in violation of Section 106 of the Copyright Act, 17 U.S.C. § 106. (Amend. Compl. at 2.) Plaintiff seeks an injunction prohibiting defendants from continuing to infringe its copyright, an order requiring defendants to deliver up for destruction all copies of the song, and money damages. (Amend. Compl. at 3-4.) Both defendants admit to creating and distributing different versions of the song but deny that these actions amounted to an infringement on the grounds that the song is in the public domain, and, therefore, not protectible. (Def. Mtn. at 2.) Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the Copyright Act's statute of limitations, 17 U.S.C. § 507(b), limits plaintiff's remedy to those wrongful acts that occurred within three years of the filing of the complaint. *Id.*

*Motion for Judgment on the Pleadings*
A Rule 12(c) motion for summary judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989); Alexander v. City of Chicago, 994 F.2d 333, 335 (7th Cir. 1993).* This court, viewing all facts in the light most favorable to the plaintiff, may grant the motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomason, 888 F.2d at 1204.* The court "may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true." *Alexander, 994 F.2d at 335.*

*Analysis*
When a suit is based on conduct that continues over a lengthy period of time, a plaintiff can ordinarily recover only those damages resulting from wrongful acts that occurred within the period of the applicable statute of limitations. *See F.E.L. Publications Ltd. v. Catholic Bishop, 754 F.2d 216, 219 (7th Cir.), cert. denied, 474 U.S. 824 (1985); Paramount Pictures Corp. v. Labus, 16 U.S.P.Q.2d 1142, 1146 (W.D. Wis. 1990).* The statute of limitations for copyright actions is set forth in Section 507(b) of the Copyright Act, which states that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Since Forster filed its complaint on July 26, 1993, all infringing acts that occurred before July 26, 1990 appear to be time-barred. However, plaintiff argues that the "continuing violation" doctrine applies in this case, allowing it to "reach back" beyond the three years and collect damages.

*2 The continuing violation doctrine allows a plaintiff to recover damages for a series of related wrongful acts -- even though the earlier acts occurred beyond the limitations period. *Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir. 1989); Taylor v. Meirick, 712 F.2d 1112, 1118-19 (7th Cir. 1983).* A continuing violation exists when the first wrongful act does not create a separate, complete action, but instead marks the first step in a pattern of wrongful conduct. *Creditors' Comm'n of Gaslight Club ex rel. Gaslight Club v. Fredricks (In re Gaslight Club), 167 B.R. 507, 520 (Bankr. N.D. Ill. 1994) (citing Taylor,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

712 F.2d at 1119). The series of violations is treated as a single wrong and "the statute of limitations does not begin to run ... till the wrong is over and done with." *Taylor,* 712 F.2d at 1118.

By contrast, the continuing wrong doctrine does not apply "where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward and seeking redress" at an earlier time. *Wilson v. Giesen,* 956 F.2d 738, 743 (7th Cir. 1992). It does not protect a plaintiff who knew or should have known of the violation, but nonetheless failed to come forward and file suit at an earlier time. *Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 282 (7th Cir. 1993). In such cases, the court will not allow the plaintiff to sit back, accumulate a series of wrongful acts, and then file suit -- regardless of whether wrongful conduct occurred within the statutory period. *In re Gaslight Club,* 167 B.R. at 520; *see id.*

In *Taylor v. Meirick,* 712 F.2d 1112, the Seventh Circuit unequivocally decided that the continuing violation doctrine applied to copyright infringement cases. *Id.* at 1119. In that case, an owner of the copyrights to several maps brought suit against a distributor who had copied and distributed the maps without authorization. The first acts of copying occurred more than three years prior to the filing of the complaint, but the maps were being sold with the defendant's complicity even after the trial began. *Id.* at 1117. In addition, the defendant had put his own copyright notice on the infringing copies to hide the fact of infringement. *Id.* at 1118.

The court held the acts that had occurred more than three years prior to filing the complaint were not time-barred, offering several alternative explanations for its reasoning. *Id.* at 1118-19. In passing, the court suggested that equitable estoppel would save plaintiff's claim because "it should be enough to toll the statute of limitations that a reasonable man would not have discovered the infringement." *Id.* at 1118. Also, since the defendant had actively attempted to hide its infringement by placing a fake copyright on its copies and assuring plaintiff that it had destroyed the infringing plates, the limitations period could be tolled for fraudulent concealment. *Id.* Finally, the court indicated that, since the unauthorized copying and sale of copyrighted material had transpired over a period of several years, there had been a "continuing violation" on which the statute of limitations did not start to run until the final map had been sold. *Id.* at 1119. Since plaintiff sued promptly once he learned of the infringement, the court allowed him to reach

back and obtain damages resulting from the infringement beyond the three years allowed under the statute of limitations. *Id.*

*3 Not all circuits agree with the Seventh Circuit that the continuing violation doctrine applies in copyright cases. In fact, among the circuits deciding the issue, *Taylor* expresses the minority view. *See, e.g., Kregos v. Associated Press,* 3 F.3d 656, 662 (2d Cir. 1993), *cert. denied,* 114 S. Ct. 1056 (1994); *Makedwde Publishing Co.,* 37 F.3d 180, 182 (5th Cir. 1994); *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir. 1994). Nonetheless, *Taylor* has been cited extensively by courts in the Seventh Circuit, with approval, and remains good law. *See, e.g., McCool v. Strata Oil Co.,* 972 F.2d 1452, 1466 (7th Cir. 1992); *Wilson,* 956 F.2d at 743; *Webb v. Indiana Nat'l Bank,* 931 F.2d 434, 438 (7th Cir. 1991); *Malhotra,* 885 F.2d at 1310. [FN1] Therefore, if the factors required to establish a continuing violation are met, a plaintiff can recover damages beyond the three-year statutory period.

The burden was on Forster to show that there was a continuing violation. Once the defendant has established that a claim is barred the burden shifts to the plaintiff to show the claim is timely. *Zapp v. United Transp. Union,* 879 F.2d 1439, 1441 (7th Cir. 1989), *cert. denied,* 493 U.S. 1021 (1990); *Clift v. UAW,* 818 F.2d 623, 629 (7th Cir. 1987). For the doctrine to apply, at least one violation must have occurred within the statutory period, entitling the plaintiff to relief for that wrong alone. *Malhotra,* 885 F.2d at 1310; *In re Gaslight Club,* 167 B.R. at 520. In addition, there must be facts making it unreasonable to require the plaintiff to sue separately for each violation. *Moskowitz,* 5 F.3d at 281 (citing *Malhotra,* 885 F.2d at 1310). For instance, if the plaintiff neither knew nor had reason to know of the wrong, even though he exercised reasonable diligence, it would be unreasonable to expect him to file earlier. *Moskowitz,* 5 F.3d at 281. Likewise, it is unfair to strictly apply the limitations period to a plaintiff who had no reason to attribute an injury to an unlawful act until after a series of similar occurrences revealed their wrongful character. *Id.; Malhotra,* 885 F.3d at 1310.

Foster has not provided any factual or legal explanation for why it could not have sued defendants earlier. In fact, the amended complaint does not even state when Forster first learned of the infringement. All that is alleged is that defendants infringed Forster's copyright -- nothing more. These facts are insufficient to show that it would have been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unreasonable for Forster to sue earlier. Having alleged no facts to establish a continuing violation, plaintiff must settle for those damages, if any, that it suffered within three years of the date the complaint was filed.

Finally, the court notes that plaintiff has made no allegation that defendants infringed during the three-year period. Although defendants did not specifically raise this issue, the absence of these allegations is fatal to plaintiff's entire claim. As such, the court holds that it is appropriate to dismiss the complaint in its entirety. Plaintiff is given leave to file a Second Amended Complaint by May 5, 1995 identifying, if it can, specific acts of infringement that occurred between July 26, 1990 and July 26, 1993.

### Conclusion

**\*4** Defendants' 12(c) motion for judgment on the pleadings is granted and the complaint is dismissed. Plaintiff is given leave to file a Second Amended Complaint by May 5, 1995.

> FN1. Certainly, there is reason to doubt the Seventh Circuit's devotion to the continuing violation principle. In *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, Judge Posner (who also wrote the opinion in *Taylor*) explained that a "continuing violation ... is a rather vague concept and its utility is questionable when there is a statute of limitations administered in accordance with the doctrine of equitable tolling...." *Id.* at 281. That is, tolling operates to delay the running of the limitations period for the time that a diligent plaintiff does not know of the wrongful cause of an injury. *Id.* Since the requirements and result are the same under either an equitable tolling or a continuing violation analysis, "there is no need for a separate doctrine of continuing violation." *Id.* (stating that "multiplication of concepts is the bane of American law").

1995 WL 239093 (N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

Westlaw.

Slip Copy                                                                    Page 1
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
(Cite as: 2004 WL 2367740 (N.D.Ill.))

**H**

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois, Eastern Division.
TELEWIZJA POLSKA USA, INC. a Delaware
Corporation, Plaintiff,
v.
ECHOSTAR SATELLITE CORPORATION, a
Colorado corporation, Defendant.
**No. 02 C 3293.**

Oct. 15, 2004.
Phillip Jay Zisook, Paul M. Levy, Brian D. Saucier,
Deutsch, Levy & Engel, Chicago, IL, for Plaintiff.

Mitchell Alan Orpett, Douglas C. Crone, Tribler,
Orpett & Crone, Chicago, IL, Ross W. Wooten,
David M. Noll, T. Wade Welch & Associates,
Houston, TX, for Defendant.

MEMORANDUM OPINION AND ORDER

KEYS, Magistrate J.

*1 Currently before the Court are Plaintiff's 17
Motions *in Limine* and Defendant's 38 Motions *in
Limine.* The Court will address each party's Motions
in turn.

DISCUSSION

A Motion *in Limine* should be granted only if the
evidence clearly is not admissible for any purpose.
*See Hawthorne Partners v. AT & T Technologies,
Inc., 831 F.Supp. 1398, 1400 (N.D.Ill.1993).*
Generally, motions *in limine* are disfavored. Instead
of barring evidence before trial, the preferred practice
is to resolve questions of admissibility as they arise.
*See Scarboro v. Travelers Ins. Co., 91 F.R.D. 21, 22
(E.D.Tenn.1980).* By deferring evidentiary rulings
until trial, courts can properly resolve questions of
foundation, relevancy, and prejudice. *See Hawthorne
Partners, 831 F.Supp. at 1401.*

I. Plaintiff's Motions in Limine

Plaintiff has filed seventeen separate motions *in
limine.* A number of those motions attack the
propriety of allowing Defendant to proceed with

several affirmative defenses, based upon the evidence
produced--or not produced--during discovery.
Because a motion *in limine* is not the appropriate
vehicle for addressing the strength of the evidence or
the substance of a complaint, *See Mid-America
Tablewares, Inc. v. Mogi Trading Co., 100 F.3d
1353, 1362 (7th Cir.1996),* the Court denies these
motions in a fairly cursory manner.

In its First Motion *in limine,* Plaintiff argues that
Defendant should be prohibited from arguing that it
was entitled to sell subscriptions after the parties'
contract was terminated. Plaintiff notes that in *Polska
USA, Inc. v. Echostar,* No. 02-4332, 2003 WL
21579968, (7th Cir. July 7, 2003), the Seventh
Circuit reversed the district court's conclusion that
the only permissible interpretation of the parties' contract
permitted Defendant to sell subscriptions during the
post-termination period. In reversing the dismissal of
Plaintiff's breach of contract claim, the Seventh
Circuit stated that the more natural reading of the
parties' contract prohibited Defendant from selling
subscriptions to the Polska programming after it
received Plaintiff's notice of termination. Plaintiff
asserts that the law of the case doctrine bars
Defendant from arguing that its conduct (ie, selling
subscriptions after the termination of the contract)
was permissible, because the Seventh Circuit has
held otherwise.

Law of the case is a judicially created doctrine that
seeks to limit repeated appeals of issues that have
already been decided. *Gertz v. Welch, 680 F.2d 527*
(7th Cir.1982). While a district court is not free to
disregard an appellate ruling, the court may rule on
issues not directly decided on appeal. *Id. at 532*
(noting that the law of the case doctrine is not an
"immutable rule," depriving the court of jurisdiction
over an issue, but is rather a prudential limitation.)

In this case, the Seventh Circuit found that Plaintiff's
Complaint stated a cognizable breach of contract
claim. On September 1, 2004, Judge Guzman issued
a Memorandum Opinion and Order, finding that
Defendant was, nevertheless, "free to argue that it
had the right to [sell subscriptions during the post-
termination period] because the contract did not
explicitly forbid its conduct." *Telewizja Polska USA,
Inc. v. Echostar Satellite Corp.,* No. 02 C 3293
(N.D.Ill. Sept. 1, 2004). Because Judge Guzman has
decided that the Seventh Circuit's ruling does not

Slip Copy
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
(Cite as: 2004 WL 2367740 (N.D.Ill.))

Page 2

prevent Defendant from arguing that its conduct is authorized under the parties' contract, the Motion is denied

**\*2** Next, Plaintiff seeks to exclude evidence and testimony supporting Defendant's counterclaim for tortious interference with prospective economic advantage, in its Second Motion *in limine*. Plaintiff argues that Defendant should be precluded from presenting such evidence, because Defendant failed to produce any evidence in support of its tortious interference claim. The Court agrees that Defendant should not be permitted to introduce evidence at trial that it **refused to produce** during discovery. However, the Court finds that Plaintiff's argument here--that the evidence that Defendant has produced is insufficient to support a claim for tortious interference--is better reserved for a summary judgment motion. *KRW Sales Inc. v. Kristel Corp.,* No. 93 C 4377, 1994 WL 75522, at \*1 (N.D.Ill. Mar.8, 1994) (motions in limine should be utilized for resolving evidentiary, not substantive, disputes). Plaintiff's Second Motion *in limine* is denied.

Plaintiff seeks to exclude evidence and testimony supporting Defendant's defamation counterclaim, because Defendant has allegedly failed to produce sufficient evidence in support of this claim. Plaintiff is again seeking a substantive ruling on the sufficiency of Defendant's evidence. The Court denies Plaintiff's Third Motion *in limine*.

In Motion *in limine* 4, Plaintiff claims that, because one of Defendant's officers acknowledged that Defendant was withholding revenue payments, Plaintiff's alleged statement that Echostar was "scamming" Polska was not defamatory. Plaintiff is asking the Court to weigh the evidence and determine whether Defendant has enough evidence in support of its defamation counterclaim to warrant a trial. Because Plaintiff is improperly seeking a ruling on the substance of Defendant's defamation claim, Motion *in limine* 4 is denied.

Plaintiff seeks to prevent Defendant from introducing at trial amendments to the deposition testimony of Mr. Michael Schwimmer. Federal Rule 30(e) allows a witness to review his deposition transcript and make " 'any changes in form or substance" ' to the answers. *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1406 (N.D.Ill.1993) (quoting *Lugtig v. Thomas,* 89 F.R.D. 639, 641 (N.D.Ill.1981)). The witness must provide a specific reason for each change made; a blanket, conclusory explanation is insufficient. However, "[a]

witness can make changes that contradict the original answers, and the reasons given need not be convincing." *Hawthorne,* 831 F.Supp. at 1406. Courts usually allow such amendments, and stress the fact that these changes can be inquired into on cross examination. *Hawthorne,* 831 F.Supp. at 1407; *Sanford v. CBS, Inc.,* 594 F.Supp. 713, 715 (N.D.Ill.1984) (noting that courts typically are reluctant to strike these changes.)

In the instant case, Mr. Schwimmer is not seeking to directly contradict his deposition testimony, but rather to "explain" or put into context answers given during his deposition. *See, e.g., Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 389 (7th Cir.2000) (noting that, while it seems dubious to permit a deponent to change his testimony from what he said to what he meant to say via subsequent affidavit, Rule 30(e) clearly permits the practice.) While Mr. Schwimmer has offered the identical explanation for each requested change, it is not for the Court "to examine the sufficiency, reasonableness or legitimacy of the reasons for the change"--that is reserved for the trier of fact. *Lugtig,* 89 F.R.D. at 641. Plaintiff is free to explore the distinctions between Mr. Schwimmer's deposition testimony and amended testimony at trial. Motion *in limine* 5 is denied.

**\*3** In Motion *in limine* 6, Plaintiff seeks to prevent Defendant from introducing evidence and testimony relating to Defendant's lost profits and lost business. Plaintiff asserts that the evidence is inadmissible, because Defendant failed to produce relevant tax returns, evidence of lost subscription sales, and other responsive evidence. Defendant counters that it has produced all relevant, non-privileged evidence, and notes that Plaintiff's reliance upon Illinois state caselaw is misplaced.

Defendant's failure to produce its tax returns and other requested evidence prevents Defendant from introducing such evidence at trial. However, there is no rule stating that a tax return is the exclusive method for proving damages or lost business. The issue of whether Defendant will be unable to establish damages absent this evidence should be addressed in a summary judgment motion.

The cases relied upon by Plaintiff are readily distinguishable, as they involved an Illinois procedural rule not applicable in the instant case, *see Hawkins v. Wiggins,* 92 Ill.App.3d 278, 47 Ill.Dec. 866, 415 N.E.2d 1179 (Ill.App.1980); *Smith v. P.A.C.E.,* 323 Ill.App.3d 1067, 257 Ill.Dec. 158, 753 N.E.2d 353 (Ill.App.2001) (both applying Illinois

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
(Cite as: 2004 WL 2367740 (N.D.Ill.))

Page 3

Supreme Court Rule 237(b)), or a court-imposed sanction for failing to comply with a court's discovery order, pursuant to Federal Rule 37, *see Govas v. Chalmers,* 965 F.2d 298 (7th Cir.1992), which cannot be invoked in the instant case, because there has been no court order compelling discovery. *See FineLine Distributors, Inc. v. Rymer Meats, Inc.,* No. 93 C 5685, 1994 WL 376283, at *4 (N.D.Ill. July 15, 1994) ("the cases interpreting Rule 37(b) clearly establish that the Court should only issue sanctions pursuant to Rule 37(b) for a violation of a court order regarding discovery.")

The Court will grant Plaintiff's Motion, to the extent that Plaintiff seeks to preclude Defendant from introducing evidence that it **refused to produce** during discovery. But absent evidence that Defendant's failure to produce the documents was in violation of a court order, or was otherwise wilful, the Court denies Plaintiff's Motion.

In its Seventh Motion *in limine,* Plaintiff seeks to preclude Defendant from introducing any evidence in support of its affirmative defenses of waiver, estoppel, ratification, assumption of the risk, failure to mitigate, and unclean hands. Once again, Plaintiff bases its Motion, largely, upon its claim that Defendant's evidence fails to raise a genuine issue of material fact with regard to these claims. Because substantive rulings should be reserved for substantive motions, Plaintiff's Seventh Motion *in limine* is denied.

Similarly, Plaintiff's Eighth Motion *in limine,* seeking to bar Defendant's affirmative defenses of estoppel, unclean hands, and laches, is an attack on the substance of Defendant's affirmative defenses, and is, therefore, denied.

Plaintiff's Ninth, Twelfth, and Thirteenth Motions *in limine* seek to preclude any evidence in support of Defendant's Thirteenth and Fifteenth Affirmative Defenses, and its Illinois Uniform Deceptive Trade Practices Act Counterclaim, respectively. These Motions are denied as moot, however, as Judge Guzman has already granted Plaintiff's Motion to Strike these same affirmative defenses and counterclaim. *See Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,* No. 02 C 3293 (Sept. 1, 2004).

*4 In its Tenth Motion *in limine,* Plaintiff moves for an Order finding that Defendant is a public figure for purposes of its counterclaims. The United States Supreme Court recognizes two classes of public figures: 1) those who are public figures for all purposes; and 2) those who are public figures for a particular public controversy. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

To determine whether an entity is a limited purpose public figure, courts look to "the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* at 352. The Court disagrees that Defendant's mere status as a satellite provider renders it a public figure. Nevertheless, Plaintiff has demonstrated that Defendant has sufficiently interjected its position on the controversy into the public realm so as to warrant labeling it a public figure for purposes of this defamation action.

After Plaintiff's programming was pulled from the air, Defendant repeatedly ran a message promoting its version of the events giving rise to the cancellation on the station formerly broadcasting Plaintiff's shows. Defendant had the opportunity to counter Plaintiff's alleged attacks on its reputation, as well as to shape public opinion on the issue by directly addressing the non-party individuals most interested in the controversy. Under these circumstances, this Court is of the opinion that Defendant is a limited purpose public figure. Therefore, Plaintiff's Tenth Motion *in limine* is granted, in part.

Plaintiff's Eleventh Motion *in limine* seeks to prevent Defendant from introducing any evidence in support of its fourteenth affirmative defense of mistake. Once again, Plaintiff's attack on the substance of Defendant's affirmative defense and the sufficiency of Defendant's evidence is better left to a summary judgment motion. Notably, Judge Guzman denied Plaintiff's Motion to Strike Defendant's Fourteenth Affirmative Defense in his September 1, 2004 Memorandum Opinion and Order. *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,* No. 02 C 3293, at *10 (N.D.Ill. Sept. 1, 2004).

In its Fourteenth Motion *in limine,* Plaintiff moves to preclude Defendant from introducing any exhibits that it has produced as translations performed by a company identified as Transtelecom. The exhibits purport to transcribe emails from unidentified individuals to Plaintiff's officers, in both the original Polish text and English translations, provided by Transtelecom. Plaintiff attacks the admissibility of the exhibits on numerous fronts. The most persuasive attack goes to the accuracy of the translations; the translations are obviously inaccurate on their face.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
(Cite as: 2004 WL 2367740 (N.D.Ill.))

Page 4

The exhibits consist of email communications between two alleged consumers and Plaintiff's President, Mr. B.M. Spanski. Both consumers express their frustration, in Polish, with the termination of the Polonia program. Mr. Spanski responded in kind, offering both individuals the *identical* response. Despite the fact that Mr. Spanski gave the same response--verbatim--to both individuals, Transtelecomm has translated the responses quite differently.

**\*5** Specifically, Transtelecomm interprets the first two sentences of Mr. Spanski's response to a Ms. Barbara Malewicz as follows: "Dish Network ordered us to give them full rights to distribute TV Polonia in the United States. We could not agree to those terms, nor will we agree to those terms, I am very sorry it has come to this." Conversely, Transtelecomm interprets the first two sentences of Mr. Spanski's identical response to "CAC2201" as "Dish Network worked hard to reach an agreement with TV Polonia U.S. sales agent to allow to continue delivering television channels into your homes. There are a lot of unhappy people with this situation."

Defendant offers no explanation for the obvious differences between the translations, and the differences are significant. In this case, Defendant has alleged that Plaintiff defamed it, in part, by claiming that Defendant was demanding exclusive rights to distribute TV Polonia. The translation of Mr. Spanski's response to Ms. Malewicz strongly supports Plaintiff's claim, while the translation of Mr. Spanski's response to CAC2201 is far more benign.

However, a party challenging the authenticity or accuracy of a translation bears the burden of presenting a competing translation, permitting the trier of fact to chose which version to credit. *United States v. Briscoe*, 896 F.2d 1476, 1492 (7th Cir.1990). In this case, Plaintiff has not offered a competing translation of the emails. Defendant has, however, substantially eased Plaintiff's burden in attacking the accuracy of Defendant's translations.

Next, Plaintiff states that the inaccurate translations are evidence of sanctionable conduct on Defendant's part. The Court disagrees that the translations, standing alone, are sufficient evidence of sanctionable conduct. The translations could be the result of honest human error. There is simply not enough evidence before the Court to sanction Defendant at this time.

Finally, "[a] judge is entitled to exclude unreliable evidence." *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669 (7th Cir.2002). If the litigants were trying this case before this Court, the Court would likely strike both translations as being inherently unreliable. However, this close decision is better left to the trial judge. Motion denied.

Plaintiff's Fifteenth Motion *in limine* seeks to bar Defendant from introducing an exhibit to prove what Polska's website looked like on various dates in 2001. The exhibit is potentially damaging, as it purports to show Polska advertising DISH Network as a provider of T.V. Polonia on Polska's website *after* the expiration of the contract period. Plaintiff contends that the exhibit constitutes double hearsay, and, therefore, Defendant should not be permitted to present the exhibit at trial. The Court disagrees. "To the extent these images and text are being introduced to show the images and text found on the websites, they are not statements at all--and thus fall outside the ambit of the hearsay rule." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1155 (C.D.Cal.2002) (noting that the printouts of the website are admissible pursuant to the best evidence rule.) Moreover, the contents of Polska's website may be considered an admission of a party-opponent, and are not barred by the hearsay rule. *See Van Westrienen v. Americontinental Collection Corp.*, 94 F.Supp.2d 1087, 1109 (D.Or.2000).

**\*6** Plaintiff then contends that the exhibit has not been properly authenticated. [FN1] Attached to the exhibits is an affidavit from Ms. Molly Davis, verifying that the Internet Archive Company retrieved copies of the website as it appeared on the dates in question from its electronic archives. Plaintiff labels the Internet Archive an unreliable source and claims that Defendant has not, therefore, met the threshold requirement for authentication.

> FN1. Coincidentally, Plaintiff claims that it is unable to access any images of its website during the time in question.

Federal Rule of Evidence 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *U.S. v. Harvey*, 117 F.3d 1044, 1049 (7th Cir.1997). Admittedly, the Internet Archive does not fit neatly into any of the non-exhaustive examples listed in Rule 901; the Internet Archive is a relatively new source for archiving websites. Nevertheless, Plaintiff has presented no evidence that the Internet Archive is unreliable or biased. And Plaintiff has

Slip Copy
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
(Cite as: 2004 WL 2367740 (N.D.Ill.))

Page 5

neither denied that the exhibit represents the contents of its website on the dates in question, nor come forward with its own evidence challenging the veracity of the exhibit. Under these circumstances, the Court is of the opinion that Ms. Davis' affidavit is sufficient to satisfy Rule 901's threshold requirement for admissibility. Plaintiff is free to raise its concerns regarding reliability with the jury.

Finally, Plaintiff asserts that Ms. Davis is an undisclosed expert witness and that her affidavit authenticating the exhibits should be barred. The Court rejects Plaintiff's assertion that Ms. Davis is offering an opinion, expert or otherwise, and rejects Plaintiff's argument. Plaintiff's Fifteenth Motion *in limine* is denied.

In its Sixteenth Motion *in limine,* Plaintiff asks that Defendant be prohibited from introducing any evidence that statements--other than those alleged in its Second Amended Counterclaimare defamatory.

Plaintiff contends that courts in the Northern District employ the precise language requirement in defamation actions. *Vantassell-Matin v. Nelson,* 741 F.Supp. 698, 707-08 (N.D.Ill.1990). The precise language requirement ensures that the opposing party has notice of the words alleged to be defamatory in forming its responsive pleadings. *Id.*

However, at least one court in this district has questioned the propriety of employing the judicially-created precise language rule, given Rule 8's liberal notice pleading requirement. In *Socorro v. IMI Data Search Inc.,* Judge Kennelly issued a thorough and well reasoned opinion tracing the roots of the precise language rule to nonbinding precedent from the Eighth Circuit. No. 02 C 8120, 2003 WL 1964269, at *3 (N.D.Ill. April 28, 2003). Judge Kennelly further notes that "an allegation is considered 'specific enough' if it permits the defendant to understand the specific nature of the claim and form a responsive pleading." *Id.* citing *Cozzi v. Pepsi-Cola Gen. Bottlers Inc.,* No. 96 C 7228, 1997 WL 312048, at *5 (N.D.Ill. June 6, 1997) (stating that "courts in this district ... have held that the defamatory language need not be quoted verbatim").

*7 For example, in *Harding v. Rosewell,* 22 F.Supp.2d 806, 818 (N.D.Ill.1998), the court found that once a case proceeds beyond the pleading stage, the appropriate inquiry is whether the opposing party had notice of the defamatory remarks. The court noted that "[t]he defendants, through discovery, have been given all the notice required of the alleged

defamatory statements." *Id.*

Similarly, in the case at bar, the pleading stage has long since past; discovery is now closed. While Plaintiff asserts (but does not explain) prejudice, the Court is of the opinion that Plaintiff was given sufficient notice of the alleged defamatory remarks through the discovery process. And the "new" remarks that Defendant seeks to rely upon in support of its defamation counterclaim, like the two statements identified in Defendant's Second Amended Counterclaim, all arise from the parties' falling out over their attempts to renew their contract. Under these circumstances, the Court finds that it would be inappropriate to bar evidence of the allegedly defamatory statements not specifically identified in Defendant's Second Amended Counterclaim. Plaintiff's Sixteenth Motion *in limine* is denied.

Plaintiff seeks to bar Defendant from introducing a redacted email to an unknown recipient from Telewizja's President, B.M. Spanski in its Seventeenth Motion *in limine.* Plaintiff claims that the document should not be admitted because it has not been authenticated, among other reasons. Defendant counters that Mr. Spanski authenticated the email by identifying it in his deposition. A review of the relevant deposition testimony belies Defendant's assertion. Mr. Spanski acknowledged that the email contained his email address, and little more. He neither recognized the email, nor remembered sending it. Because the document has not been authenticated, Plaintiff's Seventeenth Motion *in limine* is granted.

II. Defendant's Motions In Limine

Defendant has filed an astounding 38 Motions *in limine;* very few warrant serious discussion. In half of its motions, Defendant is seeking little more than acknowledgment that it has correctly recited the Federal Rules of Evidence. Plaintiff apparently agrees that Defendant has succeeded in this limited regard, stating that it has no objection to Defendant's Motions *in limine* Nos. 1, 2, 6, 8, 10, 14, 15, 16, 17, 20, 21, 23, 24, 25, 26, 27, 29, 33, and 36.

Motion *in limine* No. 34 (which "claims surprise" as to matters, causes of action, theories of recovery, etc. that Plaintiff hasn't specifically identified) seeks to preclude precisely *nothing,* while Motion No. 38 (a catch-all provision referencing all of the "matters listed above") seeks to preclude almost *everything.* Both Motions are denied.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
(Cite as: 2004 WL 2367740 (N.D.Ill.))

Page 6

Defendant's Third Motion *in limine* seeks to preclude Plaintiff's counsel and witnesses from referencing any statement of the law, other than that regarding the burden of proof and the basic legal definitions. Plaintiff does not object to the Motion, but asks that it exclude the Seventh Circuit's holding in *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02-4332, 2003 WL 21579968, at *2-3 (7th Cir. Sept.10, 2003).

**8 Plaintiff does not suggest how, precisely, it would like to introduce the Seventh Circuit's opinion into evidence. Of course, it would be inappropriate for a witness to testify as to the contents of the Seventh Circuit's decision. The interpretation of the contract is the province of the court, not the jury; accordingly, the jury does not require assistance from the Seventh Circuit in interpreting and evaluating the scope of the parties' agreement. The Motion is granted.

Defendant's Motions *in limine* Nos. 4, 5, and 18 contend that any reference to prior verdicts, lawsuits, or claims against it is impermissible, pursuant to Federal Rule of Evidence 401 (defining relevant evidence), Rule 402 (stating that relevant evidence is generally admissible), and 403 (noting that relevant evidence should not be admitted if it is unduly prejudicial). Similarly, In Motions 28, 30, 31, and 32, Defendant seeks to exclude evidence of collateral bad acts or character evidence, citing Rule 404.

Plaintiff correctly notes however, that where a movant places its character at issue, evidence of reputation or specific instances of conduct may be admitted to prove character. Fed.R.Evid. 405(a) and (b). A movant may put its character at issue by filing a claim for defamation, "where injury to reputation must be proven." *Johnson v. Pistelli*, No. 95 C 6424, 1996 WL 587554, at *3, n. 5 (N.D.Ill. Oct.8, 1996).

In this case, Defendant has filed a defamation counterclaim. To the extent that Plaintiff demonstrates at trial that evidence of other claims or lawsuits involving Defendant, or of Defendant's collateral bad acts bears upon its character and reputation, that evidence may be admissible. *See Schafer v. Time, Inc.*, 142 F.3d 1361, 1370 (11th Cir.1998). Because such evidence may be admissible at trial, upon a proper showing by Plaintiff, motions *in limine* Nos. 4, 5, 18, 28, 30, 31, and 32 are denied.

In Motions *in limine* Nos. 7, 11, 12, and 13, Defendant asserts that evidence of its size, power, net worth, assets, or wealth is irrelevant and, even if

relevant, would be unduly prejudicial. *See* Fed.R.Evid. 402 and 403. In its counterclaims, however, Defendant has alleged that Plaintiff defamed it and otherwise caused it damage by claiming that Defendant is a "monopoly" and has otherwise asserted its powerful market position to bully Plaintiff. Evidence of Defendant's market strength and wealth would likely be relevant in defending against such a claim. To the extent that Defendant places its wealth and/or power at issue, it may open the door to evidence on the issue. Therefore, the motions are denied.

Defendant's Ninth Motion *in limine* seeks to prohibit inquiry into its communications with its attorneys. While privileged communications that have not been waived will remain off limits, Defendant's request captures non-privileged communications with counsel, as well as instances where the privilege has been waived. *See, e.g.,* C & F Packing Co., Inc. v. IBP, Inc., No. 93 C 1601, 1997 WL 619848 (N.D.Ill. Sept.30, 1997). As such, Defendant's Ninth Motion *in limine* is denied.

**9 Defendant also seeks to prevent Plaintiff from commenting on Defendant's failure to produce a witness, if, in fact, Defendant fails to produce a witness at trial. Permitting or prohibiting attorneys from commenting on its opponents failure to call a witness rest soundly within the discretion of the trial judge. *U.S. v. Simpson*, 974 F.2d 845, 848 (7th Cir.1992). Because a ruling on the issue is best reserved for trial, Defendant's Nineteenth Motion *in limine* is Denied.

Defendant then asks the Court to prevent Plaintiff from introducing new theories of damages, as well as previously undisclosed damage calculations. Plaintiff counters that granting the motion would eliminate the flexibility required to potentially modify its damages calculations to meet the evidence introduced at trial. The Court grants Defendant's Twenty-second Motion *in limine* in part, barring Plaintiff from introducing at trial any evidence concerning a source of damages that it has failed to disclose. However, to the extent that Plaintiff must modify its damages calculations in light of the evidence presented or rulings made at trial, the Motion is denied.

Defendant's Thirty-fifth Motion *in limine* seeks to bar any reference to the substance of statements of potential witnesses until trial. The Court notes, however, that traditionally, attorneys have referenced potential witnesses and testimony during opening argument and that granting Defendant's Motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673
**(Cite as: 2004 WL 2367740 (N.D.Ill.))**

Page 7

would prevent the parties from doing so. Defendant's Thirty-fifth Motion *in limine,* therefore, is denied.

Finally, Defendant's Thirty-seventh Motion *in limine* requests Plaintiff be prevented from mentioning that it seeks disgorgement damages from Defendant's profits. Defendant argues that disgorgement is not a valid remedy in a breach of contract action, because the terms of the contract governs the parties' relationship. *See Conseco Group Risk Mgmt. Co. v. Ahrens Fin. Sys. Inc.,* No. 00 C 5467, 2001 WL 219627, at *6 (N.D.Ill. Mar.6, 2001).

Plaintiff does not dispute Defendant's assertion, but notes that it brought the unjust enrichment claim-- which would give rise to a disgorgement remedy -in the alternative to the breach of contract claim. As Judge Guzman has not dismissed Plaintiff's unjust enrichment claim, it would be inappropriate at this stage of the proceedings to preclude Plaintiff from mentioning disgorgement damages. Therefore, Defendant's Motion *in limine* 37 is denied.

*CONCLUSION*

As set forth above, the Court grants Plaintiff's Seventeenth Motion *in limine,* and grants in part Plaintiff's Sixth and Tenth Motions *in limine.* The Court denies Plaintiff's remaining Motions *in limine.*

With respect to Defendant's Motions, the Court grants Motions *in Limine* Nos. 1, 2, 3, 6, 8, 10, 14, 15, 16, 17, 20, 21, 23, 24, 25, 26, 27, 29, 33, and 36, as Plaintiff has not objected to these Motions. The Court denies Defendant's Motions *in Limine* Nos. 4, 5, 7, 9, 11, 12, 13, 18, 19, 28, 30, 31, 32, 35, 37 and 38.

2004 WL 2367740 (N.D.Ill.), 65 Fed. R. Evid. Serv. 673

**Motions, Pleadings and Filings (Back to top)**

. 2004 WL 2257334 (Trial Motion, Memorandum and Affidavit) Defendant Echostar's Trial Brief (Jul. 30, 2004)

. 2004 WL 2257335 (Trial Motion, Memorandum and Affidavit) Plaintiff's Trial Brief (Jul. 30, 2004)

. 2004 WL 2257333 (Trial Pleading) Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories (Feb. 12, 2004)

. 2004 WL 2257332 (Trial Motion, Memorandum

and Affidavit) Echostar's Supplemental Response and Opposition to Polska's Motion to Compel (Jan. 23, 2004)

. 2003 WL 23819231 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Dismiss Counterclaim (Dec. 17, 2003)

. 2003 WL 23819232 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Strike Affirmative Defenses (Dec. 17, 2003)

. 2003 WL 23819230 (Trial Pleading) Defendant Echostar Satellite Corporation's Second Amended Answer, Affirmative Defenses & Counterclaims (Dec. 08, 2003)

. 2003 WL 23819229 (Trial Pleading) Defendant Echostar Satellite Corporation's Amended Answer, Affirmative Defenses & Counterclaims (Nov. 06, 2003)

. 2003 WL 23819228 (Trial Pleading) Defendant Echostar Satellite Corporation's Answer and Affirmative Defenses (Oct. 17, 2003)

. 2003 WL 23819226 (Trial Pleading) Second Amended Complaint (Oct. 02, 2003)

. 2002 WL 32680168 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Motion to Compel (Sep. 13, 2002)

. 2002 WL 32680164 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiff's Response to Motion to Dismiss (Aug. 20, 2002)

. 2002 WL 32680154 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Motion to Dismiss (Aug. 06, 2002)

. 2002 WL 32680159 (Trial Pleading) Amended Complaint (Aug. 06, 2002)

. 2002 WL 32680147 (Trial Pleading) Complaint (May. 07, 2002)

.          1:02CV03293          (Docket) (May. 07, 2002)

END OF DOCUMENT

# EXHIBIT I

<div align="center">

𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱
𝔉𝔬𝔯 𝔱𝔥𝔢 𝔑𝔬𝔯𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔍𝔩𝔩𝔦𝔫𝔬𝔦𝔰
𝔈𝔞𝔰𝔱𝔢𝔯𝔫 𝔇𝔦𝔳𝔦𝔰𝔦𝔬𝔫

</div>

| | |
|---|---|
| AGFA MONOTYPE CORPORATION, A Delaware corporation, and INTERNATIONAL TYPEFACE CORPORATION, a New York Corporation, ) ) ) ) | |
| Plaintiffs, ) | No.: 03 C 4349 |
| v. ) | Judge Amy J. St. Eve |
| BITSTREAM, INC., a Delaware corporation, ) | Magistrate Judge Denlow |
| Defendant. ) | |

<div align="center">

**PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS**

</div>

Now come plaintiffs, AGFA MONOTYPE CORPORATION and INTERNATIONAL

TYPEFACE CORPORATION, by their attorneys Paul F. Stack, Robert A. Filpi and Cori A.

Szczucki, and in response to Defendant's First Set of Requests for Production of Documents and

Things, state as follows:

<div align="center">

**GENERAL OBJECTIONS**

</div>

Plaintiffs object to Defendant's "Definitions" and "Instructions" to the extent that they

require production and/or conduct that is more extensive than required by the Federal Rules of

Civil Procedure and will interpret all Definitions and Instructions as if they sought information

coextensive with the scope of the Federal Rules of Civil Procedure and will construe each and every

request for production as if the request were coextensive with the scope of the Federal Rules of Civil

Procedure. By way of illustration and not limitation, Defendant's definitions of "Agfa Monotype",

"Concern", and "Document" are far broader than permitted or reasonable.

<div align="center">

1

</div>

**Response:**

 **Plaintiffs will produce all responsive documents within their possession, custody or control to the extent that such documents are not privileged.**

Request No. 19
All documents concerning or evidencing alleged instances of infringement of the Marks by Bitstream or through use of Bitstream's TrueDoc software program and technology.

**Response:**

 **Plaintiffs will produce all responsive documents within their possession, custody or control to the extent that such documents are not privileged.**

Request No. 20
All documents concerning or evidencing alleged instances of infringement of the Copyrighted Works by Bitstream or through use of Bitstream's TrueDoc software program and technology.

**Response:**

 **Plaintiffs will produce all responsive documents within their possession, custody or control to the extent that such documents are not privileged.**

Request No. 21
All documents concerning or evidencing alleged instances where copyright strings were removed from Agfa Monotype's works by Bitstream or through use of Bitstream's TrueDoc software program and technology.

**Response:**

 **Plaintiffs will produce all responsive documents within their possession, custody or control to the extent that such documents are not privileged.**

Request No. 22
All documents concerning Agfa Monotype's testing and analysis of the structure and operation of Bitstream's TrueDoc software program and technology.

**Response:**

 **Plaintiffs will produce all responsive documents within their possession, custody or control to the extent that such documents are not privileged.**

Request No. 23
All documents concerning the sales of Agfa Monotype's Products.

that they may elicit in the trial of this case. Such a request invades the attorney work product privilege and Plaintiffs object on this ground also.

Request No. 52
All exhibits Agfa Monotype will introduce into evidence at trial.

**Response:**

Plaintiffs object to this Request to Produce as being an improper request, not within the purview of Rule 34. Any trial exhibits will be disclosed and produced at the appropriate time as required by scheduling orders in this action.

AGFA MONOTYPE CORPORATION AND
INTERNATIONAL TYPEFACE CORPORATION

By: _____
One of the attorneys for the Plaintiffs

Paul F. Stack (2698544)
Robert A. Filpi (804444)
Cori A. Szczucki (6278572)
STACK & FILPI CHARTERED
Suite 411
140 South Dearborn Street
Chicago, Illinois 60603-5298
(312) 782-0690
facsimile (312) 782-0936

# EXHIBIT J

# In the United States District Court
## For the Northern District of Illinois
### Eastern Division

AGFA MONOTYPE CORPORATION, )
A Delaware corporation, and INTERNATIONAL )
TYPEFACE CORPORATION, a New York )
Corporation, )
)
        Plaintiffs, )    No.: 03 C 4349
)
        v. )
)    Judge Amy J. St. Eve
BITSTREAM, INC., a Delaware corporation, )
)    Magistrate Judge Denlow
        Defendant. )

## DECLARATION OF VLADIMIR LEVANTOVSKY

The undersigned Vladimir Levantovsky certifies as follows:

1. I am currently an employee of Monotype Imaging, Inc., which is the recently modified name for Agfa Monotype Corporation. Monotype Imaging, Inc. has its principal place of business at 200 Ballardvale St., Wilmington, Massachusetts, 01887.

2. I have been employed by Monotype Imaging and its predecessor, Agfa Monotype Corporation ("Agfa Monotype") since 2001. International Typeface Corporation ("ITC") is a wholly owned subsidiary of Monotype Imaging.

3. In 1986 I received a Masters Degree in Computer Engineering from Kharkov Polytechnical University in Kharkov, Ukraine. In 1992, I completed all of the academic requirements for a Ph.D. from Kharkov Polytechnical University and received a certificate of completion. This was in Computer Engineering, Control Theory and Computer Sciences. While I worked on my doctorate I served as research scientist and part-time assistant professor at

1

Kharkov Polytechnical University. From 1992 through 1995 I founded my own company in Kharkov, Ukraine, developing algorithms and software tools for testing and diagnostics of digital systems.

4. In 1995 I immigrated to the United States and started working in Parsippany, New Jersey, for Pipeline Associates, a company that developed software for printer manufacturers. Later I took a job with XLI (Xerographic Laser Imaging), which eventually merged with Oak Technology Imaging. I held the title of principal engineer. I worked on the development of algorithms for digital image processing. In 2001, I began working for Agfa Monotype Corporation as a staff engineer, working with fonts and related font technologies.

5. I have been asked to identify and explain certain web sites that contain Agfa Monotype and/or ITC fonts, converted into PFRs. There are no means of knowing how many Agfa Monotype and/or ITC fonts that have been converted to PFRs actually occur on websites, and the process of locating such sites is haphazard and largely trial and error. The difficulties are compounded because copyright strings do not appear in PFRs and some font names are used to designate font programs owned by several different owners. For example, "ITC Garamond" is a registered trademark of ITC; however, other font companies produce their own versions of Garamond.

6. The first website that was discovered using an Agfa Monotype or ITC font and converting it to PFR format is the "Webmonkey" website at URL: http://hotwired.lycos.com/webmonkey/99/45/index1a.html. (A true and correct printout of relevant parts of this site is attached hereto as Attachment 1) This printout was provided to Bitstream in discovery, marked as M 1-11) The site contains instructions, entitled "Embedding Fonts Tutorial", written by one Steve Mulder. The article was discovered in August 2003 and has been

2

on the web since then (although the URL has changed). The site utilizes the "ITC Tempus" typeface owned by ITC. In the tutorial Mr. Mulder identifies himself as manager of information architecture in the user experience group at Terra Lycos. He provides step by step instructions about converting ITC Tempus in the standard OpenType format, in which it is distributed, into PFR. The site uses the "ITC Tempus" font and actually converts it into a PFR, identified by the name: "tempus.pfr". Attachment 1 contains an advertisement for AT&T at the top of the first page.

7. Another web site that was discovered in March 2004 is the "catdancers" website, located at http://www.catdancers.com/webmags/webrevu/1999/02_19/designers/02_99_3.html. (A true and correct print out of this web site is attached, marked as Attachment 2. The web site uses the ITC Highlander font in PFR format.

8. Another website that was discovered in March 2004 is the "efuse" website, located at http://www.efuse.com/truedoc/index.html. (A true and correct copy of this website is attached hereto, marked as Attachment 3) [M 7206-7207] This website expands on the "Catdancer" website and again uses the ITC Highlander® font, which is known by its registered trademark and provides a sample of ITC Highlander converted in a PFR that is known identified by the name ITC Highlander. The site contains links to Bitstream and offers a discount on Bitstream's WebFont Wizard, a product used to convert fonts to PFR format.

9. Another website, discovered in February 2004, is the "Dynamic Fonts" site, now found at http://web.archive.org/web/20040210033515/http://ucprogramming.hypermart.net/css/article1.html (A true and correct copy of this site is attached as Attachment 4.) The title for the article is written in ITC's Jokerman font, converted into a PFR. This is seen in the "html" download from the site that provides information about the website and identifies the font in the title as "Jokerman2.pfr".

The article gives instructions about how to convert a page to PFR file, including how to name the converted font with the original font name followed by ".pfr".

10. Another website just discovered in November 2004 is the Digit Designs site located at: http://www.digitdesigns.com/WebType/. This site contains numerous samples of typefaces, including 20 fonts of Agfa Monotype and ITC that have been converted into PFR format. The converted fonts are the following:

| | |
|---|---|
| Charlotte (two weights) | Unregistered Trademark of ITC |
| Humana Sans ITC (two weights) | Registered Trademark of ITC |
| ITC Officina Sans | Registered Trademark of ITC |
| Tempus Sans | Registered Trademark of ITC |
| Caslon 224 (three weights) | Unregistered Trademark of ITC |
| ITC Mendoza (two weights) | Registered Trademark of ITC |
| Galliard | Registered Trademark of ITC |
| Slimbach (three weights) | Registered Trademark of ITC |
| Usherwood (three weights) | Registered Trademark of ITC |
| Harlow | Unregistered Trademark of ITC |
| Script MT | Script is an Unregistered Trademark of AMT; MT is a Registered Trademark of AMT |
| Chiller | Unregistered Trademark of ITC |
| Jokerman | Unregistered Trademark of ITC |

(A true and correct printout of relevant parts of the website is attached as Attachment 5[1])

---

[1] To reduce the size of Attachment 5, samples of PFRs in the larger point sizes have been eliminated and except for the first font, Charlotte Sans, the html "source" has been reduced to a single page. The full html "source" was included for Charlotte Sans to show that there is no copyright management information indicated. There is no copyright management information in the "source" for any of the fonts in the attachment.

Attachment 5 contains the introductory pages from the site plus a printout of the smaller type sizes of the PFR versions of the fonts described in the website and the associated "html" pages, which contains information concerning the underlying ITC or Agfa Monotype font that was used to make the PFR version. Only the first referenced weight of a given trademarked font is copied although inspection of the other weights reveals the same use of ITC and Agfa Monotype fonts.

11. After obtaining a revised and complete copy of Bitstream's specifications for the PFR in the fall of 2002, Agfa Monotype commenced a through analysis of the PFR. An employee used the PFR specification to locate the data that was copied from an originating font into a PFR for that font. In addition, a series of experiments were conducted that led to the conclusion that the output from Bitstream's WebFontMaker could not have been achieved without copying of the inputted font.

Under penalties as provided in Section 1746 of Title 28, United States Code, I certify that the above is true and correct.

Vladimir Levantovsky

Dated: December 1, 2004

Paul F. Stack
Robert A. Filpi
Cori A. Szczucki
Stack & Filpi Chartered
140 S. Dearborn St. Suite 411
Chicago, Illinois 60603
(312) 782-0690
Facsimile: (312) 782-0936

# EXHIBIT K

## Snow, Jeffrey L.

| | |
|---|---|
| **From:** | Robert A. Filpi [rfilpi@stackfilpi.com] |
| **Sent:** | Saturday, May 21, 2005 2:25 PM |
| **To:** | Snow, Jeffrey L.; Milanette, Robert |
| **Cc:** | Cori Szczucki |
| **Subject:** | Further Revised PTO |
| **Attachments:** | 100 PTO 5.20.05 Untracked.doc; 100 PTO 5.20.05 RedLine.doc |

Hello Jeff--

I took your draft of last night and added some changes. Mainly, I added backup exhibits to product sales, plaintiffs exhibits 15A and 15B and one more exhibit at the end of my list. Exhibits 15 A and 15B relate to your fair use defense. You will also find changes in the Statement of Case.

I had some trouble removing the tracking on your revisions. Perhaps your secretary will be better able to do so.

My suggested schedule is for both of us to have our Proposed Findings and Conclusions and Trial Briefs ready by 12:30 or 1 my time. That should give us plenty of time to make copies and to have Eric come over to sign the original before filing.

Best regards,

Bob

Robert A. Filpi
Stack & Filpi Chtd.
140 S. Dearborn  Suite 411
Chicago, Illinois 60603
(312) 782-0690
Fax:  312 782-0936
email:  rfilpi@stackfilpi.com

Please Note: This e-mail message contains Privileged and Confidential Information intended only for the use of the recipient named above. If you are not the intended recipient of this e-mail transmission, you are hereby notified that any forwarding, printing, or dissemination or copying of this e-mail transmission is strictly prohibited. If you have received this e-mail transmission in error, please immediately notify us by reply e-mail transmission. Thank you.

(312) 782-0690
rfilpi@stackfilpi.com